DEPARTMENT OF PUBLIC SAFETY *v.* FREEDOM
OF INFORMATION COMMISSION ET AL.
(SC 18489)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille,
Zarella and McLachlan, Js.*

————

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

Argued March 18—officially released November 2, 2010

*Lynn D. Wittenbrink*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (plaintiff).

*Kathleen K. Ross*, commission counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellee (named defendant).

*Alexander Wood*, pro se, the appellee (defendant).

*Opinion*

ZARELLA, J. The principal issue in this appeal is whether the named defendant, the freedom of information commission (commission), properly ordered the plaintiff, the department of public safety (department), to disclose information contained in its sex offender registry because it was not subject to the provisions in General Statutes § 54-255[1] restricting the dissemination

[1] General Statutes § 54-255 provides: "(a) Upon the conviction or finding of not guilty by reason of mental disease or defect of any person for a violation of section 53a-70b, the court may order the Department of Public Safety to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access, provided the court finds that dissemination of the registration information is not required for public safety and that publication of the registration information would be likely to reveal the identity of the victim within the community where the victim resides. The court shall remove the restriction on the dissemination of such registration information if, at any time, the court finds that public safety requires that such person's registration information be made available to the public or that a change of circumstances makes publication of such registration information no longer likely to reveal the identity of the victim within the community where the victim resides. Prior to ordering or removing the restriction on the dissemination of such person's registration information, the court shall consider any information or statements provided by the victim.

"(b) Upon the conviction or finding of not guilty by reason of mental disease or defect of any person of a criminal offense against a victim who is a minor, a nonviolent sexual offense or a sexually violent offense, where the victim of such offense was, at the time of the offense, under eighteen years of age and related to such person within any of the degrees of kindred specified in section 46b-21, the court may order the Department of Public Safety to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access, provided the court finds that dissemination of the registration

of registration information regarding certain offenders.

information is not required for public safety and that publication of the registration information would be likely to reveal the identity of the victim within the community where the victim resides. The court shall remove the restriction on the dissemination of such registration information if, at any time, it finds that public safety requires that such person's registration information be made available to the public or that a change in circumstances makes publication of the registration information no longer likely to reveal the identity of the victim within the community where the victim resides.

"(c) Any person who: (1) Has been convicted or found not guilty by reason of mental disease or defect of a violation of subdivision (1) of subsection (a) of section 53a-71 between October 1, 1988, and June 30, 1999, and was under nineteen years of age at the time of the offense; (2) has been convicted or found not guilty by reason of mental disease or defect of a violation of subdivision (2) of subsection (a) of section 53a-73a between October 1, 1988, and June 30, 1999; (3) has been convicted or found not guilty by reason of mental disease or defect of a criminal offense against a victim who is a minor, a nonviolent sexual offense or a sexually violent offense, between October 1, 1988, and June 30, 1999, where the victim of such offense was, at the time of the offense, under eighteen years of age and related to such person within any of the degrees of kindred specified in section 46b-21; (4) has been convicted or found not guilty by reason of mental disease or defect of a violation of section 53a-70b between October 1, 1988, and June 30, 1999; or (5) has been convicted or found not guilty by reason of mental disease or defect of any crime between October 1, 1988, and September 30, 1998, which requires registration under sections 54-250 to 54-258a, inclusive, and (A) served no jail or prison time as a result of such conviction or finding of not guilty by reason of mental disease or defect, (B) has not been subsequently convicted or found not guilty by reason of mental disease or defect of any crime which would require registration under sections 54-250 to 54-258a, inclusive, and (C) has registered with the Department of Public Safety in accordance with sections 54-250 to 54-258a, inclusive; may petition the court to order the Department of Public Safety to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access. Any person who files such a petition shall, pursuant to subsection (b) of section 54-227, notify the Office of Victim Services and the Victim Services Unit within the Department of Correction of the filing of such petition. The Office of Victim Services or the Victim Services Unit within the Department of Correction, or both, shall, pursuant to section 54-230 or 54-230a, notify any victim who has requested notification pursuant to subsection (b) of section 54-228 of the filing of such petition. Prior to granting or denying such petition, the court shall consider any information or statements provided by the victim. The court may order the Department of Public Safety to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access, provided the

The department appeals[2] from the judgment of the trial court, which upheld the commission's order to disclose information in the sex offender registry relating to forty-one convicted sex offenders, claiming that the court improperly (1) reviewed the commission's decision for abuse of discretion rather than applying plenary review, and (2) interpreted the relevant statutes. The commission and the defendant Alexander Wood,[3] a staff writer for the Journal Inquirer, respond that the court properly reviewed the commission's decision for abuse of discretion and interpreted the relevant statutes. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On March 19, 2007, Heather Nann Collins, a staff writer for the Journal Inquirer, wrote a letter to the department requesting the "list of the names and addresses of [forty-one] convicted sex offenders, whose names are currently known only to law enforcement personnel under . . . [§] 54-255" or, alternatively, "the court orders restricting those [forty-one] sex offenders to the non-public sex offender registry, and any public information the [d]epartment has regarding the offenders' convictions."

On March 20, 2007, the department sent a letter to Collins stating that it was reviewing her request. After several more weeks of correspondence in which Collins pressed for the release of the requested information and the department repeatedly advised her that the

court finds that dissemination of the registration information is not required for public safety."

[2] The department appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The Journal Inquirer, a newspaper based in the town of Manchester, and Heather Nann Collins, a staff writer for the Journal Inquirer, also were defendants in this case. Collins, however, is no longer a party to this action, and the Journal Inquirer has not actively participated in any appeals subsequent to the commission's decision. Accordingly, the commission and Wood are the only defendants participating in the appeal to this court.

matter was under review, Collins, Wood and the Journal Inquirer filed a complaint with the commission on May 16, 2007, alleging that the department's failure to provide the information was, in effect, a denial of Collins' request and a violation of the Freedom of Information Act (act), General Statutes § 1-200 et seq.[4]

---

[4] General Statutes § 1-206 provides in relevant part: "(a) Any denial of the right to inspect or copy records provided for under section 1-210 shall be made to the person requesting such right by the public agency official who has custody or control of the public record, in writing, within four business days of such request, except when the request is determined to be subject to subsections (b) and (c) of section 1-214, in which case such denial shall be made, in writing, within ten business days of such request. Failure to comply with a request to so inspect or copy such public record within the applicable number of business days shall be deemed to be a denial.

"(b) (1) Any person denied the right to inspect or copy records under section 1-210 . . . may appeal therefrom to the Freedom of Information Commission, by filing a notice of appeal with said commission. . . .

"(2) In any appeal to the Freedom of Information Commission under subdivision (1) of this subsection or subsection (c) of this section, the commission may confirm the action of the agency or order the agency to provide relief that the commission, in its discretion, believes appropriate to rectify the denial of any right conferred by the Freedom of Information Act. . . .

"(3) In making the findings and determination under subdivision (2) of this subsection the commission shall consider the nature of any injustice or abuse of administrative process, including but not limited to: (A) The nature, content, language or subject matter of the request or the appeal; (B) the nature, content, language or subject matter of prior or contemporaneous requests or appeals by the person making the request or taking the appeal; and (C) the nature, content, language or subject matter of other verbal and written communications to any agency or any official of any agency from the person making the request or taking the appeal.

"(4) Notwithstanding any provision of this subsection to the contrary, in the case of an appeal to the commission of a denial by a public agency, the commission may, upon motion of such agency, confirm the action of the agency and dismiss the appeal without a hearing if it finds, after examining the notice of appeal and construing all allegations most favorably to the appellant, that (A) the agency has not violated the Freedom of Information Act, or (B) the agency has committed a technical violation of the Freedom of Information Act that constitutes a harmless error that does not infringe the appellant's rights under said act. . . .

"(d) Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183. Notwithstanding the provisions of section 4-183, in any such appeal of a decision of the commission, the court may conduct an in camera review of the original or a certified copy of the records which are at issue in the appeal but were

On May 25, 2007, the department released ninety pages of information that had been partially redacted pursuant to § 54-255 and one page that had been partially redacted pursuant to General Statutes § 17a-101k.[5] The documents released to Collins were copies of the court orders restricting the dissemination of the registration information concerning the forty-one offenders.[6] On August 30, 2007, the commission held a hearing to consider the complaint. At the hearing, Collins and Wood argued that the department had not provided the information promptly and that the redactions did not comply with § 54-255 because they were over inclusive. The department responded that it initially had believed

---

not included in the record of the commission's proceedings, admit the records into evidence and order the records to be sealed or inspected on such terms as the court deems fair and appropriate, during the appeal. The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. If aggrievement is a jurisdictional prerequisite to the commission taking any such appeal, the commission shall be deemed to be aggrieved. . . ."

Although § 1-206 was amended in 2007; see Public Acts 2007, No. 07-202, § 11; those amendments have no bearing on the merits of the appeal. In the interest of simplicity, we refer to the current revision of the statute.

[5] General Statutes § 17a-101k provides in relevant part: "(a) The Commissioner of Children and Families shall maintain a registry of the commissioner's findings of abuse or neglect of children pursuant to section 17a-101g that conforms to the requirements of this section. The regulations adopted pursuant to subsection (i) of this section shall provide for the use of the registry on a twenty-four-hour daily basis to prevent or discover abuse of children and the establishment of a hearing process for any appeal by a person of the commissioner's determination that such person is responsible for the abuse or neglect of a child pursuant to subsection (b) of section 17a-101g. The information contained in the registry and any other information relative to child abuse, wherever located, shall be confidential, subject to such statutes and regulations governing their use and access as shall conform to the requirements of federal law or regulations. Any violation of this section or the regulations adopted by the commissioner under this section shall be punishable by a fine of not more than one thousand dollars or imprisonment for not more than one year. . . ."

[6] Because the orders were redacted, it is not clear whether the unredacted orders contained all of the requested information. Neither Wood nor Collins claimed otherwise, however, and we therefore presume, for purposes of our analysis, that all or most of the requested information was contained in the unredacted orders.

that none of the requested information was subject to disclosure. It further explained, however, that it had decided to release the redacted court orders in an attempt to balance its obligations under the act to disclose public records and its obligations under the applicable court orders and relevant statutory provisions to restrict the dissemination of registration information for law enforcement purposes only and to ensure that no information that might be used to identify the offenders or their victims would be made available to the public. See General Statutes § 54-255. After the hearing, and at the hearing officer's request, the department submitted copies of the unredacted documents to the commission for an in camera inspection.

On November 14, 2007, the commission issued a final decision, based on the hearing officer's report, in which it concluded that the term "registration information," as used in § 54-255 and General Statutes § 54-258 (a) (4),[7] is limited to the information published by the department on its sex offender registry website. This information included the offender's (1) name and alias, (2) address, (3) visible scars, marks or tattoos, (4) race, (5) date of birth, (6) hair and eye color, (7) gender, (8) height and weight, (9) photograph, (10) crimes requiring registration and a description thereof, (11) date of conviction, and (12) state police bureau of identification number. The commission also found that the information that the department claimed to be exempt from disclosure consisted of the (1) name, address, date of birth, and date of conviction of the sex offender, (2) town where the offense occurred, and date of the

[7] General Statutes § 54-258 (a) provides in relevant part: "(4) Notwithstanding the provisions of subdivisions (1) and (2) of this subsection, registration information the dissemination of which has been restricted by court order pursuant to section 54-255 and which is not otherwise subject to disclosure, shall not be a public record and shall be released only for law enforcement purposes until such restriction is removed by the court pursuant to said section. . . ."

offense, (3) docket number of the case, (4) name and location of the court to which the case had been assigned, (5) name of the judge, (6) names of the clerk, assistant clerk, and deputy clerk of the court, (7) names of the prosecuting and defense attorneys, (8) date of the plea, (9) date of the disposition, (10) date of the sentence, (11) name and address of the applicant seeking to restrict dissemination of the registration information, where the applicant also is the registered sex offender, and (12) name and address of the applicant seeking to restrict dissemination of the registration information, where the applicant is not the registered sex offender. The commission concluded that, under the plain and unambiguous language of § 54-255, the only information on the department's list that satisfied the definition of "registration information" and thus was exempt from mandatory disclosure was the offender's name, address, date of birth, date of conviction, and the name and address of the applicant seeking to restrict dissemination of the registration information, where the applicant is the registered sex offender. Accordingly, the commission ordered the department to provide Collins, Wood and the Journal Inquirer with a copy of the requested documents from which this information had been redacted.

On December 31, 2007, the department appealed from the commission's decision to the Superior Court pursuant to General Statutes § 4-183. In a written order dated May 12, 2008, the trial court expressed concern that the department had read the protections of § 54-255 too broadly but that the commission had read them too narrowly, and asked the parties to brief the question of whether the department should be ordered to promulgate a regulation defining the term "registration information."

On May 30, 2008, the commission filed a motion requesting the court to remand the case to the commis-

sion for clarification in light of a May 29, 2008 letter from Wood stating that he no longer was seeking certain information that the commission previously had ordered to be disclosed. Wood explained that the only information he now was seeking was the (1) name and location of the court to which the case had been assigned, (2) name of the judge, (3) names of the clerk, assistant clerk and deputy clerk, (4) names of the prosecuting and defense attorneys, and (5) name and address of the applicant seeking to restrict dissemination of the registration information, where the applicant was not the registered sex offender. Wood emphasized, with respect to information concerning the applicant, that he was not seeking the identity of the victim or the crime committed by the offender. On July 29, 2008, the court granted the motion and remanded the case to the commission for further consideration, retaining jurisdiction to hear any future appeal.

In a second letter to the commission dated July 31, 2008, Wood added that he was not seeking information as to the dates that appeared in the records. After reconsidering the matter, the commission issued a revised final decision on October 22, 2008, responding to Wood's modified request.[8] The commission specifically concluded: "With respect to the limited information now at issue in this case . . . it is found that such information is administrative information contained in court records, and is not information about the registrant that would identify the registrant to the general public. Moreover, it is found that the [department] failed to prove that the court records at issue are sealed at the court, or are otherwise unavailable for public

---

[8] In its revised final decision, the commission noted that, "[a]lthough [Collins, Wood and the Journal Inquirer] requested the court orders for [forty-one] registered sex offenders, the [department], in [its] in camera submission, stated that there are only [thirty-nine] registered sex offenders whose registration information has been ordered restricted."

inspection, or that the information at issue is not publicly known. . . .

"It is therefore concluded that the information described in [Wood's letters][9] is not 'registration information' within the meaning of [the relevant statutory provisions]. . . .

"Accordingly, it is concluded that the [department] violated [the act] in redacting the information [in question] . . . from the [in camera] records . . . ." The commission ordered the department to provide Collins, Wood and the Journal Inquirer with copies of the in camera documents, redacted in accordance with its decision. The department then appealed from the commission's revised final decision to the trial court.

In its memorandum of decision, the trial court observed that the commission had adopted different approaches in its first and second decisions. "The first decision defined 'registration information' narrowly to include only the data that the registrant is obliged to furnish to the [department] for its registry. Thus, according to the [commission], court orders to restrict disclosure issued pursuant to § 54-255 did not block disclosure of such matters as the date of the offense, the court docket number, or the date of sentence. The [commission] in this decision was aware that making such items known would increase the likelihood of finding out the name of the offender and hence the name of the victim.

"The revised decision depends first of all on the fact that Wood has limited his request. But the [commission] has also changed its underlying analysis. [The decision] notes that the general public should not receive 'regis-

[9] The commission referred only to the first four items described by Wood in his May 29, 2008 letter. It did not refer to the name and address of the person applying to restrict dissemination of registration information, where the applicant was not the registered sex offender.

tration information' if it would 'identify registrants [when] such information would lead to the identification of the registrant's victim.' Further, [the decision] states: 'It is concluded that "registration information" . . . means information about the registrant that would identify the registrant.' Further, the [commission] reviewed in camera the information as now requested by Wood and concluded that the disclosure of such information would not identify the registrant."

The trial court described the claims on appeal as whether the commission incorrectly had concluded that the records ordered to be disclosed were "public records" and whether they were restricted by court order under § 54-255. The court stated that, because these issues involved the application of General Statutes § 1-210 (b) (1)[10] to the facts of the case, the standard of review was whether the commission had abused its

[10] General Statutes § 1-210 provides in relevant part: "(a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212. Any agency rule or regulation, or part thereof, that conflicts with the provisions of this subsection or diminishes or curtails in any way the rights granted by this subsection shall be void. Each such agency shall keep and maintain all public records in its custody at its regular office or place of business in an accessible place and, if there is no such office or place of business, the public records pertaining to such agency shall be kept in the office of the clerk of the political subdivision in which such public agency is located or of the Secretary of the State, as the case may be. Any certified record hereunder attested as a true copy by the clerk, chief or deputy of such agency or by such other person designated or empowered by law to so act, shall be competent evidence in any court of this state of the facts contained therein.

"(b) Nothing in the Freedom of Information Act shall be construed to require disclosure of:

"(1) Preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure . . . ."

discretion. With respect to the first claim, the court concluded that the information in question fell within the definition of a "public record" and that, even though there are exceptions to the disclosure of public records, including the exception in § 54-258 (a) (4), such information nevertheless was a public record. With respect to the second claim, the court observed that the commission had concluded that "registration information" means information that would divulge the name of the victim, and that this would include information in the registry as well as other information maintained by the department. The trial court agreed with the commission's definition of "registration information" as being consistent with §§ 54-255 and 54-258 (a) (4), and concluded that "[t]he requested documents were possibly exempt because of the court orders but [were], after an in camera review, 'otherwise subject to disclosure.' " The court further concluded that, although the department had argued that all information in the registry restricted by court orders should be protected, the commission had concluded otherwise and that the scope of the statutory exemption should be determined on a case-by-case basis. The court thus concluded that the commission had not abused its discretion in ordering the department to disclose the information and dismissed the appeal. This appeal followed.

I

The department first claims that the trial court applied the incorrect standard in reviewing the commission's decision. The department specifically claims that, because the court was required to interpret the meaning of "registration information," as that term is used in chapter 969 of the General Statutes, also known as Megan's Law, it should have exercised plenary review and afforded no deference to the commission's construction of the term. The commission responds that the abuse of discretion standard applies because Collins,

Wood and the Journal Inquirer asked the commission to interpret the relevant statutes in light of the particular facts that distinguish this case. We agree with the department.

It is well established that "[j]udicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act [(UAPA) General Statutes § 4-166 et seq.] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . .

"Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference." (Citations omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 136–37, 778 A.2d 7 (2001). "We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute

. . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . . *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 390, 709 A.2d 1116 (1998); accord *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 121, 742 A.2d 1257 (2000) (government agency's reasonable, time-tested interpretation should be accorded great weight by the courts); *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 719, 546 A.2d 830 (1988) (deference to . . . time-tested agency interpretation of a statute, but only when the agency has consistently followed its construction over a long period of time, the statutory language is ambiguous, and the agency's interpretation is reasonable). Consequently, an agency's interpretation of a statute is accorded deference when the agency's interpretation has been formally articulated and applied for an extended period of time, and that interpretation is reasonable. Cf. *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, supra, 390 n.18 (finding no deference warranted to agency interpretation when agency had failed to make public declaration of interpretation and had applied interpretation for only four years). . . . *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 261–63, 788 A.2d 60 (2002)." (Internal quotation marks omitted.) *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 163–64, 931 A.2d 890 (2007).

In the present case, the parties' dispute as to the meaning of "registration information" presents a question of statutory interpretation. Because this is a case of first impression, however, the commission's interpretation has never been subjected to judicial scrutiny or consistently applied by the agency over a long period of time. Accordingly, the traditional deference normally accorded to an agency's interpretation of a statutory

term was not required in this case, and the trial court improperly reviewed the commission's decision for an abuse of discretion rather than applying plenary review.

Although Wood appears to agree that interpretation of the term "registration information" requires plenary review,[11] the commission relies on *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 604 A.2d 351 (1992), and *Wiese* v. *Freedom of Information Commission*, 82 Conn. App. 604, 847 A.2d 1004 (2004), in arguing that reviewing courts have applied the abuse of discretion standard in past cases involving challenges to the act, and, therefore, that standard is applicable in the present case. We disagree. The commission, unlike Wood, fails to acknowledge our well established law on plenary review of agency decisions that have not been subjected to prior judicial scrutiny. The commission also fails to recognize that it is only "[w]hen the legislature uses a broad term . . . in an administrative context, without attempting to define that term, [that] it evinces a legislative judgment that the agency should define the parameters of that term on a case-by-case basis." (Internal quotation marks omitted.) *Ottochian* v. *Freedom of Information Commission*, supra, 398–99; accord *Wiese* v. *Freedom of Information Commission*, supra, 609. The present case, however, unlike *Ottochian* or *Wiese*, does not involve the interpretation of a very broad term that the legislature has not attempted to define. Cf. *Ottochian* v. *Freedom of Information Commission*, supra, 394, 399–400 (determining that commission did not abuse its discretion in concluding that letters discussing high school's violation of Connecticut Interscholastic Athletic Conference regulation *and* high

---

[11] To be more precise, Wood first notes that there is legal authority to suggest that the commission's interpretation should be reviewed "without deference" but then argues that the trial court correctly concluded that the commission did not abuse its discretion under the " 'substantial evidence' " standard. He ultimately concludes, however, that the commission's interpretation "is sound no matter what standard of review this court applies."

school teacher's performance were not exempt from disclosure in their entirety as " 'records of teacher performance and evaluation' " under General Statutes § 10-151c); *Wiese* v. *Freedom of Information Commission*, supra, 606, 612 (determining that commission did not abuse its discretion in concluding that document detailing factual findings and punishment for alleged misconduct by high school teacher constituted public record related to discipline and therefore was subject to disclosure under § 1-210 [a]). Rather, this case presents a pure question of law because it involves the construction of a term specific to the registration of sex offenders whose meaning can be determined by reference to other provisions in the statutory scheme. We therefore disagree with the commission and conclude that the trial court incorrectly applied the abuse of discretion standard in reviewing the commission's decision.

## II

The department next claims that the trial court incorrectly construed §§ 54-255 and 54-258 (a) (4) so as to thwart their purpose of restricting the dissemination of information in the sex offender registry regarding certain offenders when it concluded that the commission properly ordered disclosure of the requested information. The department contends that there is no qualifying language in either statute that would restrict the term "registration information" to information that would reveal the identity of an offender or a victim, and, consequently, no limitation should be read into the statutes. The commission and Wood respond that the requested information merely consists of copies of various court documents that were received, used and retained by the department in conducting "the public's business . . . ." General Statutes § 1-200 (5). They accordingly argue that the information is subject to disclosure because it satisfies the definition of "public

records" in § 1-200 (5).[12] They further argue that § 54-258 (a) (4) applies to only a small portion of the information contained in the registry and that the commission properly defined the "registration information" restricted from public access as any information that would identify the registrant. From this, the commission and Wood ultimately conclude that the requested information is subject to disclosure because it does not identify the registrant. We agree with the department.

The resolution of this appeal requires us to interpret several provisions in Megan's Law pertaining to the registration of sex offenders. Accordingly, "[w]ell settled principles of statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When

_____

[12] General Statutes § 1-200 (5) defines the term "public records or files" as "any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, or to which a public agency is entitled to receive a copy by law or contract under section 1-218, whether such data or information be handwritten, typed, tape-recorded, printed, photostated, photographed or recorded by any other method."

a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) *Woodrow Wilson of Middletown, LLC* v. *Connecticut Housing Finance Authority*, 294 Conn. 639, 644–45, 986 A.2d 271 (2010).

We begin our analysis with the relevant statutory language. Section 54-255 authorizes a trial court to restrict the dissemination of "registration information" pertaining to persons who are convicted or found not guilty by reason of mental disease or defect of certain sex offenses and offenses against minors, upon the granting of the offender's petition to restrict the dissemination of such information.[13] General Statutes § 54-255 (a) specifically provides: "Upon the conviction or finding of not guilty by reason of mental disease or defect of any person for a violation of section 53a-70b,[14]

---

[13] See footnote 1 of this opinion for the relevant text of § 54-255.

[14] General Statutes § 53a-70b, which proscribes sexual assault in a spousal or cohabiting relationship, provides: "(a) For the purposes of this section:

"(1) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body; and

"(2) 'Use of force' means: (A) Use of a dangerous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim.

"(b) No spouse or cohabitor shall compel the other spouse or cohabitor to engage in sexual intercourse by the use of force against such other spouse or cohabitor, or by the threat of the use of force against such other spouse or cohabitor which reasonably causes such other spouse or cohabitor to fear physical injury.

"(c) Any person who violates any provision of this section shall be guilty of a class B felony."

the court may order the Department of Public Safety to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access, provided the court finds that dissemination of the registration information is not required for public safety and that publication of the registration information would be likely to reveal the identity of the victim within the community where the victim resides. The court shall remove the restriction on the dissemination of such registration information if, at any time, the court finds that public safety requires that such person's registration information be made available to the public or that a change of circumstances makes publication of such registration information no longer likely to reveal the identity of the victim within the community where the victim resides. Prior to ordering or removing the restriction on the dissemination of such person's registration information, the court shall consider any information or statements provided by the victim."

General Statutes § 54-255 (b) and (c) authorize the court to order similar restrictions, respectively, when the victim is "under eighteen years of age and related to [the offender] within any of the degrees of kindred specified in [General Statutes (Sup. 2010) §] 46b-21,"[15] and when offenders are convicted of certain sex offenses between 1988 and either 1998 or 1999, prior to the adoption of § 54-255, and petition the court to approve such restrictions.

In addition, General Statutes § 54-258 (a) (4), concerning the availability of registration information, pro-

---

[15] General Statutes (Sup. 2010) § 46b-21 provides: "No person may marry such person's parent, grandparent, child, grandchild, sibling, parent's sibling, sibling's child, stepparent or stepchild. Any marriage within these degrees is void."

General Statutes § 53a-191 provides in relevant part: "(a) A person is guilty of incest when he marries a person whom he knows to be related to him within any of the degrees of kindred specified in section 46b-21. . . ."

vides: "Notwithstanding the provisions of subdivisions (1) and (2) of this subsection [concerning public access to registration information], registration information the dissemination of which has been restricted by court order pursuant to section 54-255 and which is not otherwise subject to disclosure, shall not be a public record and shall be released only for law enforcement purposes until such restriction is removed by the court pursuant to said section."

Because neither of the foregoing statutes directly defines "registration information," it is not entirely clear what is meant by that term from reading the statutes in isolation. We therefore turn for guidance to other provisions in the statutory scheme relating to the registration process. See, e.g., *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003) (to ensure coherent construction of statutory provision, we look not only to provision at issue but also to broader statutory scheme); *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002) (statutes relating to same subject matter are construed "so as to create a rational, coherent and consistent body of law").

General Statutes § 54-250, which defines various words and phrases used throughout Megan's Law, also fails to define "registration information." The statute defines "registry," however, as "a central record system in this state, any other state or the federal government that receives, maintains and disseminates information on persons convicted or found not guilty by reason of mental disease or defect of criminal offenses against victims who are minors, nonviolent sexual offenses, sexually violent offenses and felonies found by the sentencing court to have been committed for a sexual purpose." General Statutes § 54-250 (9). It thus appears that "registration information" means any information that is received, maintained and disseminated by the registry. This conclusion is supported by the language

used in several other statutory provisions that describe how the registry functions.

General Statutes § 54-257 (a) designates the department as the repository for information concerning sex offenders who are required to register with the state. The statute specifically provides that "[t]he Department of Public Safety shall . . . establish and maintain a registry of all persons required to register under [the relevant statutes]." General Statutes § 54-257 (a). The statute then provides that "[t]he department shall . . . develop appropriate forms for use by agencies and individuals to report registration information . . . . Upon receipt of registration information, the department shall enter the information into the registry and notify the local police department or state police troop having jurisdiction where the registrant resides or plans to reside." General Statutes § 54-257 (a). General Statutes § 54-256 (a), which sets forth the responsibilities of courts and agencies in connection with the registration process, similarly provides that, when any person is required to complete the registration procedure established by the commissioner of public safety as a condition of their release, the "completed registration package [shall be transmitted] to the Commissioner of Public Safety who shall enter the information into the registry . . . ." General Statutes § 54-258, which is entitled "[a]vailability of registration information," provides in subdivision (1) of subsection (a) that "the registry maintained by the Department of Public Safety shall be a public record and shall be accessible to the public . . . . The Department of Public Safety shall make registry information available to the public through the Internet." Finally, General Statutes § 54-258a, which provides for a warning against the wrongful use of registry information by the public, provides that "[a]ny agency of the state or any political subdivision thereof that provides public access to information contained in the registry shall post a warning that states: 'Any

person who uses information in this registry to injure, harass or commit a criminal act against any person included in the registry or any other person is subject to criminal prosecution.' Such warning shall be in a suitable size and location to ensure that it will be seen by any person accessing registry information."

Reading these statutes together in light of the definition of "registry" in § 54-250 (9) supports the conclusion that "registration information" means "registry information," which is any information about the offender that has been received by the department from various agencies and individuals and entered into the registry. Indeed, the interchangeable use of the terms "registration information" in the boldface title of § 54-258 and "registry information" in subdivision (1) of subsection (a) of the same statute, and the fact that several statutes require that any "registration information" that the department receives be entered into the registry, makes any other conclusion all but impossible.

The commission and Wood argue that the trial court correctly determined that the requested documents are "public records," as that term is defined in § 1-200 (5), and thus are subject to the disclosure requirement of § 1-210 (a).[16] We disagree.

Although the requested information satisfies the definition of a "public record" in General Statutes § 1-200 (5) because it consists of "information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, or to which a public agency is entitled to receive a copy by law,"[17]

---

[16] See footnote 10 of this opinion.

[17] We note that the court orders in this case, which were transmitted to the department in the course of conducting the public's business of restricting the dissemination of registration information with respect to certain sex offenders, are analogous to private insurance records transmitted to a public agency in accordance with laws that require the filing of such records because, in both circumstances, public access to records previously deemed private is permitted after transmittal to the agency.

and although General Statutes § 1-210 (a) provides that "all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records [that] every person shall have the right to (1) inspect . . . [and] (2) copy," the latter statute *also* contains the caveat, "[e]*xcept as otherwise provided by any federal law or state statute* . . . ." (Emphasis added.) Moreover, we previously have noted that "[t]he exemptions contained in [various state statutes] reflect a legislative intention to balance the public's right to know what its agencies are doing, with the governmental and private needs for confidentiality. . . . [I]t is this balance of the governmental and private needs for confidentiality with the public right to know that must govern the interpretation and application of the [act]." (Internal quotation marks omitted.) *Maher* v. *Freedom of Information Commission*, 192 Conn. 310, 315, 472 A.2d 321 (1984); see also *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 328, 435 A.2d 353 (1980) ("the act does not confer [on] the public an absolute right to all government information").

Applying these principles to Megan's Law, we note that General Statutes § 54-258 (a) (1) provides in relevant part that information maintained in the registry "shall be a public record and shall be accessible to the public during normal business hours. . . ." General Statutes § 54-258 (a) (2) further provides that "[a]ny state agency, the Judicial Department, any state police troop or any local police department may, at its discretion, notify any government agency, private organization or individual of registration information . . . ." General Statutes § 54-258 (a) (4), however, expressly *limits* the applicability of these two provisions as follows: "Notwithstanding the provisions of subdivisions (1) and (2) of this subsection, registration information the dissemination of which has been restricted by court

order pursuant to section 54-255 and which is not otherwise subject to disclosure, shall *not* be a public record and shall be released only for law enforcement purposes until such restriction is removed by the court pursuant to said section." (Emphasis added.) Accordingly, we conclude that there has been no violation of the act because it is clear that the legislature intended that registration information restricted pursuant to § 54-255, which includes the requested information in this case, should not be disclosed except for law enforcement purposes until the court orders that the restriction be removed.

The commission and Wood argue that "registration information" is so broad a term that the commission must define it on a case-by-case basis, and that the commission properly did so here when it defined "registration information" as information that would identify the offender or the victim. They argue, conversely, that information in the registry that would not identify the offender or the victim directly, such as the information requested in the present case, is not registration information. The commission and Wood then point to various types of registration information required under Megan's Law that would satisfy their definition of restricted information, including the offender's name, criminal history record, address and photograph. We disagree.

There is no language in Megan's Law that restricts the meaning of "registration information" to only *some* of the information in the registry. "It is a familiar principle of statutory construction that [when] the same words are used in a statute two or more times they will ordinarily be given the same meaning in each instance . . . ." (Citation omitted; internal quotation marks omitted.) *Brennan* v. *Brennan Associates*, 293 Conn. 60, 83, 977 A.2d 107 (2009). The term "registration information" is used numerous times throughout Megan's

Law and, with respect to the statutes in question, sixteen times in § 54-255 and three times in § 54-258, not counting the boldface titles of those provisions. The term most often is preceded by the words "the" or "such," both of which imply that the term "registration information" was intended to mean the entire undivided body of information in the registry, not a portion thereof. A closer examination of how the term is used in various parts of § 54-258 makes this clear.

General Statutes § 54-258 (a) (1) provides in relevant part that "the registry maintained by the Department of Public Safety shall be a public record and shall be accessible to the public during normal business hours. . . ." There is no limiting language suggesting that only *some* of the information in the registry shall be accessible to the public. Correspondingly, General Statutes § 54-258 (a) (4) provides that, "[n]otwithstanding the provisions of subdivisions (1) and (2) of this subsection, registration information the dissemination of which has been restricted by court order pursuant to section 54-255 and which is not otherwise subject to disclosure, shall not be a public record . . . ." Because the boldface title of § 54-258 refers to the "[a]vailability of registration information," we must assume that all of its subsections and subdivisions refer to the same information. Thus, we must conclude that, just as the statute provides that *all* of the information in the registry is accessible to the public with respect to the overwhelming majority of offenders, *none* of the information in the registry is accessible to the public in the very few cases in which the court determines that the information should be restricted pursuant to § 54-258 (a) (4). Moreover, we can think of no reason why the legislature would have intended that the same term be given a different meaning in different parts of the statute. See, e.g., *State* v. *Lutters*, 270 Conn. 198, 211, 853 A.2d 434 (2004). Indeed, it would not make sense for the legisla-

ture to mandate public access to all "registration information" in one part of the statute and restrict public access to only *some* "registration information" in another part of the statute without explaining what portion of the purportedly restricted "registration information" should remain available to the public.

If the legislature had intended to limit the definition of "registration information," as that term is used in § 54-255, to only some of the information in the registry, it easily could have expressed such an intent. See, e.g., *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 299, 933 A.2d 256 (2007) (legislature knows how to convey its intent expressly). There is no language in the statute, however, suggesting that only some of the information in the registry should be subject to nondisclosure, and "[w]e are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 119, 830 A.2d 1121 (2003). Furthermore, permitting the release of information in response to serial requests for what might appear to be a few inconsequential facts about an offender could, when pieced together and considered in their totality, enable the recipient to identify the offender or the victim and to make their identities known to the general public. This cannot be what the legislature intended. Accordingly, the claim that the only "registration information" restricted from public disclosure is information that directly identifies the offender or the victim has no merit.

The commission further argues that disclosure of the requested information is consistent with the legislative history of §§ 54-255 and 54-258 (a) (4), which indicates that, although the purpose of those provisions was to protect the identity of the victim in certain limited cases by precluding the dissemination of identifying informa-

tion regarding the registrant, they were not intended to preclude the dissemination of information in the registry that would *not* reveal the identity of the registrant. The commission relies on a single remark made by Representative Michael P. Lawlor when he presented the proposed legislation to his fellow representatives, stating that, "[if] the court makes a finding that public safety could still be protected without publicizing the *name* then it would give very limited discretion to the judge to waive the public aspect of the Megan's Law registration." (Emphasis added.) 42 H.R. Proc., Pt. 11, 1999 Sess., p. 3884. Although we believe that the statutory scheme is clear, thus making it unnecessary to examine the legislative history to construe the meaning of "registration information," we do not agree that the legislative history supports the commission's view that the legislature intended that the only information in the registry protected from disclosure under §§ 54-255 and 54-258 (a) (4) is information that would directly identify the offender or the victim.

First, there is nothing in the legislative history to indicate that Representative Lawlor or anyone else who spoke on the matter intended §§ 54-255 and 54-258 (a) (4) to restrict only some of the information in the registry from disclosure. The one time Representative Lawlor referred to any particular information in the registry was when he used the word "name." Id. At all other times, he referred to "registration information" generally. Id. For example, when he initially spoke on the proposed legislation, he stated that the legislation "provides some limited discretion to our courts to waive the [I]nternet portion and the public registration portion of Megan's Law . . . ." Id., p. 3880. "[T]o publicize the registration information about the offender in some cases publicizes the identity of the victim . . . ." Id. "[O]n this year's bill, all persons convicted of sexual assault fourth degree are required to register and there

is some limited discretion to not publicly release that information, depending on the circumstances." Id., p. 3881.

Representative Lawlor subsequently added that the proposed legislation gave "our judges limited authority to waive the public aspect of the [I]nternet registration"; id., p. 3833; and the Internet and registration requirement "gives . . . limited authority to a judge to withdraw the information from the [I]nternet and from the public aspect of the registration, as long as [the offenders] come forward and register first." Id. "[I]f the court makes a finding that the public safety is not in any way in danger and that the victim's identity might be disclosed pursuant to the offender's registration then the court can in effect undo that," for example, when "a minor might have been the victim and in essence the identity of the min[o]r would be disclosed through the offender's registration. If the court makes a finding that public safety could still be protected without publicizing the name then it would give very limited discretion to the judge to waive the public aspect of the Megan's Law registration." Id., pp. 3883–84.

Subsequently, Representative Lawlor explained that, "assuming the judge makes a finding that this is in the best interest of all involved and would not in any way affect public safety, then under those circumstances . . . the judge would have the discretion to undo that public aspect of the registration." Id., p. 3916. "In other words take the name off the [I]nternet, take the public registry out of the police station. The police would still have it for their legitimate law enforcement purposes. Otherwise it would not be publicly available. And yes, there would be discretion. It wouldn't automatically come out, they'd have to go to court and ask for that to happen . . . ." Id. Senator Donald E. Williams, Jr., made similar comments when he introduced the pro-

posed legislation in the Senate. See 42 S. Proc., Pt. 10, 1999 Sess., pp. 3200–3204.

It is clear from these remarks that Representative Lawlor was referring not merely to the name of the offender or the victim when he was explaining the proposed legislation but to all of the registry information normally subject to disclosure under Megan's Law. In other words, he made no attempt to distinguish any particular type of information within the registry that would remain subject to disclosure under the nondisclosure provisions of §§ 54-255 and 54-258 (a) (4), and no such distinction can be drawn from a fair reading of his remarks or from those of Senator Williams. Accordingly, the commission's claim lacks merit because to construe the statutes as the commission urges would *frustrate* the clear intent of the legislature as manifested in the legislative history and in the language of the statutes themselves. See, e.g., *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 686, 986 A.2d 290 (2010) ("[W]e construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." [Internal quotation marks omitted.]).

In sum, there simply is no authority in Megan's Law, and none can be found in the legislative history, that would permit the release of any information in the registry previously restricted from dissemination by court order under §§ 54-255 and 54-258 (a) (4). Moreover, this court cannot provide such authority by judicial fiat. To do so would require that we disregard the language of the statutory provisions and that we interfere with the prerogatives of the courts that have issued such orders, which they alone may lift upon a determination that dissemination is necessary for public safety reasons or that a change in circumstances makes publication of

the registration information no longer likely to reveal the identity of the victim in the community where he or she resides. See General Statutes § 54-255. We therefore conclude that "registration information" means any information regarding the offender that has been provided to the department by an agency or individual, including the offender, and entered into the registry.

The concurrence claims that the terms "registration information" and "registry information" are not synonymous because (1) the use of different words in the same statute suggests that the legislature intended them to have different meanings, (2) both terms are used repeatedly throughout the statutory scheme, thus suggesting an intentional distinction, and (3) § 54-257 (a) lists conviction data, photographic images and fingerprints, in addition to "registration information," as data to be transmitted to the Federal Bureau of Investigation for inclusion in a national registry, suggesting that the former are part of the registry but are not "registration information." We disagree.

Insofar as the two terms appear repeatedly throughout the statutory scheme, the only significant distinction that can be drawn from the statutory language is that "registration information" refers to information about the offender that either will be, or has been, collected but has not yet been entered into the registry *and* information about the offender *after* it has been entered into the registry; see General Statutes § 54-255 (a), (b) and (c) (dissemination of "registration information" may be restricted under certain conditions); General Statutes § 54-257 (a) ("The department shall . . . develop appropriate forms for use by agencies and individuals to report registration information . . . . Upon receipt of registration information, the department shall enter the information into the registry . . . [and] shall also transmit all registration information . . . to the Federal Bureau of Investigation . . . for inclusion in a

national registry."); General Statutes § 54-257 (b) (department "may suspend the registration of any [registered] person . . . while such person is incarcerated, under civil commitment or residing outside state" and "may withdraw the registration information from public access" during this period); General Statutes § 54-257 (e) (when department receives notice that court has ordered change of name of person listed in registry, "the department shall revise such person's registration information accordingly"); General Statutes § 54-258 (a) (1), (2) and (4) ("registration information" shall be available to public subject to certain restrictions); whereas "registry information" refers to information about the offender only *after* it has been entered into the registry. See General Statutes § 54-256 (b) (summary of offense "shall be added to the registry information made available to the public through the Internet"); General Statutes § 54-257 (a) ("[i]f a registrant reports a residence in another state, the department shall notify the state police agency of that state or such other agency in that state that maintains registry information, if known"); General Statutes § 54-258 (a) (1) (department "shall make registry information available to the public through the Internet"); General Statutes (Sup. 2010) § 54-258 (a) (2) (B) (whenever registrant is released into community, department "shall . . . notify the superintendent of schools for the school district in which the registrant resides, or plans to reside, of such release and provide such superintendent with the same registry information for such registrant that the department makes available to the public through the Internet"); General Statutes § 54-258a (agencies providing public access to information contained in registry shall post warning against its wrongful use "to ensure that [the warning] will be seen by any person accessing registry information"). Moreover, at least two statutes refer to the fact that, after the "registration information"

is received by the department, it shall be entered into the "registry," which implies that "registration information" becomes "registry information" once it has been officially entered into the registry and may be described by either term. See General Statutes § 54-256 (a) (after offender completes "registration procedure" established by commissioner of public safety, "completed registration package" shall be transmitted to commissioner of public safety, "who shall enter the information into the registry"); General Statutes § 54-257 (a) ("[u]pon receipt of registration information, the department shall enter the information into the registry"). There is absolutely nothing in the statutory scheme to suggest that the two terms do *not* refer to the same information or that there might be any logical basis for making such a distinction. Indeed, General Statutes § 54-250 (9) defines "registry" as "a central record system . . . that receives, maintains and disseminates information on [offenders]" and makes no distinction among the different types of information in the registry that might or might not be subject to the restrictions on dissemination described in § 54-258. Thus, the only conclusion consistent with the statutory language is that "registration information" consists of any information about the offender that is received by the department and entered into the registry, and that the legislature never intended to distinguish between "registry information" and "registration information," as the concurrence contends.

The concurrence next asserts that "[t]he fact that conviction data, photographic images and fingerprints are listed *in addition* to *all* registration information [in § 54-257 (a)] would seem to suggest . . . that the former are part of the registry . . . but do not constitute registration information." (Emphasis in original.) This assertion, however, is flatly contradicted by other provisions in the statutory scheme. Section 54-251 (a)

requires offenders to register their names, certain "identifying factors" and other personal information with the department. General Statutes § 54-250 (3) defines "identifying factors" as including "fingerprints" and "a photographic image . . . ." In addition, the registration form developed by the commissioner of public safety in accordance with the statutory mandate of § 54-251 (a) requires offenders to provide the department with a photograph, fingerprints and conviction data. Accordingly, both the statutory scheme and the department consider fingerprints, a photograph and conviction data to be "registration information," and there simply is no support for the concurrence's view that "registration information" does not include these items.

Having rejected our conclusion that "registration information" is synonymous with "registry information," the concurrence attempts to determine whether the information sought by Collins, Wood and the Journal Inquirer is "registration information" by considering whether it is specifically listed or identified in any of the relevant statutes or is requested in the registration form required to be completed by all offenders. This, however, is an exercise in futility because neither the statutes nor the registration form makes any distinction between "registration information" and "registry information" with respect to the information listed therein. It therefore is impossible to say which items belong in which category. For example, the registration form is not entitled "Sex Offender Registry Form" or "Sex Offender Registration Form" but, rather, "Sex Offender Registry—Registration Form," which means that, under the concurrence's theory, the information requested in the form could be considered *either* "registration information" *or* "registry information" on the basis of the title alone. Similarly, among the various statutes that list specific information to be provided by registrants, none describes the information as "registration infor-

mation" or "registry information." See generally General Statutes §§ 54-250 (3), 54-251 (a), 54-252 (a), 54-254 (a) and 54-256 (a). The point is simply that the concurrence's assumption that "registration information" is limited to the information listed in the statutes and the registration form has absolutely no basis in fact.

The concurrence justifies its conclusion that the listed information is "registration information" on the ground that the statutes and the registration form explicitly "require" such information to be included in the registry. Merely because a court order or, for that matter, any other piece of information in the registry, is *not* listed in the statutes or the registration form, however, is no reason to conclude that it is not "registration information" that, if disseminated to the public, could be used in the same manner as the listed information to reveal the identity or the offender or the victim. Accordingly, we disagree with the concurrence and find its analysis unpersuasive.

In sum, we conclude that the trial court improperly dismissed the department's appeal from the commission's order.

The judgment is reversed and the case is remanded with direction to sustain the department's appeal.

In this opinion ROGERS, C. J., and NORCOTT, PALMER, VERTEFEUILLE and McLACHLAN, Js., concurred.

KATZ, J., concurring. I agree with part I of the majority's opinion, concluding that, because the decision of the named defendant, the freedom of information commission (commission), turns on the construction of a statutory scheme outside of the Freedom of Information Act (act), the trial court should have applied plenary review to determine whether the commission properly

ordered the plaintiff, the department of public safety (department), to disclose certain information sought by the defendant Alexander Wood[1] relating to sex offenders who had obtained court orders barring public dissemination of their registration information pursuant to General Statutes § 54-255. See footnote 1 of majority opinion. That information consisted of the name and location of the court, as well as the names of the persons involved in the underlying criminal proceedings giving rise to the registration requirement: the judge; the clerk, assistant clerk and deputy clerk; and the prosecuting and defense attorneys. Although I also agree with the majority's ultimate conclusion in part II of its opinion that this information cannot be disclosed, I wholly disagree with the reasoning underlying that conclusion, namely, that all of this information is "registration information" subject to the nondissemination order under § 54-255. Instead, the objective evidence clearly demonstrates that only the name and location of the court is registration information subject to the trial court's nondissemination order and thus shielded from disclosure under the act. I also would conclude, however, that the record clearly reflects that the only source for the rest of the information is the court's nondisclosure orders themselves, which cannot be deemed public records subject to the act. Therefore, I also would reverse the trial court's judgment dismissing the department's appeal from the commission's decision.

Although the majority's analysis begins and ends with its interpretation of the sex offender registry scheme, commonly know as Connecticut's "Megan's Law," in my view, the proper starting point of our analysis is the act. "We repeatedly have stated that [t]he overarching legislative policy of the [act] is one that favors the open conduct of government and free public access to gov-

---

[1] See footnote 3 of the majority opinion identifying the original defendants in the present case.

ernment records. . . . The sponsors of the [act] understood the legislation to express the people's sovereignty over the agencies which serve them . . . and this court consistently has interpreted that expression to require diligent protection of the public's right of access to agency proceedings. Our construction of the [act] must be guided by the policy favoring disclosure and *exceptions to disclosure must be narrowly construed. . . . Stamford* v. *Freedom of Information Commission*, 241 Conn. 310, 314, 696 A.2d 321 (1997)." (Emphasis added; internal quotation marks omitted.) *Pane* v. *Danbury*, 267 Conn. 669, 679–80, 841 A.2d 684 (2004). In the present case, the exception to public disclosure arises not within the act, but under another statutory scheme. Although our Megan's Law deems the sex offender "registry" a public record and thus brings information therein within the scope of the act; see General Statutes § 54-258 (a) (1); it also makes limited exceptions to public dissemination of certain information under specified circumstances. See General Statutes §§ 54-255 and 54-258 (a) (3), (4) and (5). Therefore, contrary to the majority's approach, I would conclude that the scope of a court's order barring public dissemination of "registration information," the exception implicated in the present case, must be narrowly construed. See *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 398, 604 A.2d 351 (1992) (applying narrow construction to statute outside of act deeming certain records not subject to disclosure).

As the majority properly recognizes, the central question in the present case is the meaning of "registration information" under § 54-255. The majority determines that the information sought in the present case is registration information, however, by making, what is in my view, two unsupported leaps of reasoning. First, the majority concludes that the undefined term "registration information" is synonymous with another term

used throughout the scheme, "registry information." Second, the majority assumes that, because the department, which maintains the sex offender registry, was able to produce some of the information sought, all of the requested information must be registry information and, a fortiori, registration information. In my view, these conclusions contravene our rules of construction, common sense and the clear evidence in the record.

I am not convinced that registration information and registry information are one and the same. As a general rule, "the use of different words in the same enactment must indicate a difference in legislative intention." *Steadwell* v. *Warden*, 186 Conn. 153, 164, 439 A.2d 1078 (1982); accord *State* v. *Bell*, 283 Conn. 748, 798, 931 A.2d 198 (2007) ("[a]s a general rule, [t]he use of . . . different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings" [internal quotation marks omitted]). Throughout the sex offender registry scheme, both "registration information" and "registry information" are used repeatedly, thus suggesting an intentional distinction, not an incidental oversight.[2] One such provision, General Statutes § 54-257 (a), which sets forth various obligations of the department, pro-

[2] As support for its conclusion that the terms are synonymous, the majority points to the fact that one term is used in the title of § 54-258, while the other is used in the text of that provision. In so doing, however, the majority disregards the legislature's own direction, which we previously have recognized, that these titles were created by the revisors of the General Statutes, not the legislature, as informal descriptions of the contents of the statutory section. See *Small* v. *Going Forward, Inc.*, 281 Conn. 417, 425 n.5, 915 A.2d 298 (2007); *Clark* v. *Commissioner of Correction*, 281 Conn. 380, 389 n.14, 917 A.2d 1 (2007). The preface to the General Statutes specifically instructs that "[t]hese boldface catchlines [following the section number of every section of the General Statutes] should not be read or considered as statements of legislative intent since their sole purpose is to provide users with a brief description of the contents of the sections." General Statutes, preface, p. vii.

vides in relevant part: "If a registrant reports a residence in another state, the department shall notify the state police agency of that state or such other agency in that state that maintains registry information, if known. The department shall also transmit *all registration information, conviction data, photographic images and fingerprints* to the Federal Bureau of Investigation in such form as said bureau shall require for inclusion in a national registry." (Emphasis added.) The fact that conviction data, photographic images and fingerprints are listed *in addition* to *all* registration information would seem to suggest, at a minimum, that the former are part of the registry, but do not constitute registration information.

I do not believe that a precise definition of either "registry information" or "registration information" is essential to our resolution of the present case, however, because it is clear from an examination of every available objective source that the information at issue in this case, with one exception, could not fall within *either* category.[3] The sex offender " '[r]egistry' " is

---

[3] I have discussed why these terms are likely not synonymous because, in another case, this difference may be dispositive. Indeed, one significant distinction may be that not all information collected by the department pursuant to General Statutes §§ 54-250 (9) and 54-257 is made available to the public on the Internet. Indeed, state or federal statute bars public disclosure of certain registry information. See, e.g., General Statutes § 54-258 (a) (5) ("a registrant's electronic mail address, instant message address or other similar Internet communication identifier shall not be a public record, except that the [department] may release such identifier for law enforcement or security purposes in accordance with regulations adopted by the department"); 42 U.S.C. § 16915a (c) (setting forth same restriction on disclosure of offender's Internet identifiers); 42 U.S.C. § 16918 (b) (mandating that each jurisdiction make all information in sex offender registry available to public but mandating following exemptions from public disclosure: identity of victim, social security number of offender, references to arrests of sex offender that did not result in conviction, and any other information exempted from disclosure by attorney general). A comparison of the information required to be provided to the department and the information actually provided to the public on the Internet registry also reveals that much of the information collected by the department is not publicly disseminated.

defined as "a central record system in this state, any other state or the federal government that receives, maintains and disseminates information on persons convicted or found not guilty by reason of mental disease or defect of criminal offenses against victims who are minors, nonviolent sexual offenses, sexually violent offenses and felonies found by the sentencing court to have been committed for a sexual purpose." General Statutes § 54-250 (9). Therefore, at the very least, it cannot be disputed that registration information would have to be information that the department is required to maintain for each registrant or each type of registrant, depending on the nature of the crime. There are several sources that aid us in determining what information the department is required to maintain.

Sex offenders are required to register their "name," "identifying factors," "criminal history record," "residence address," and "electronic mail address, instant message address or other similar Internet communication identifier . . . ." General Statutes §§ 54-251 (a), 54-252 (a) and 54-254 (a). " 'Identifying factors' " are defined as "fingerprints, a photographic image, and a description of any other identifying characteristics as may be required by the Commissioner of Public Safety. The commissioner shall also require a sample of the registrant's blood or other biological sample be taken for DNA (deoxyribonucleic acid) analysis . . . ." General Statutes § 54-250 (3). For sexually violent offenders, registration also includes "documentation of any treatment received by such person for mental abnormality or personality disorder . . . ." General Statutes § 54-252 (a); see also General Statutes § 54-256 (a) ("[i]n the case of a person being released unconditionally who declines to complete the registration package through the court or the releasing agency, the court or agency shall: [1] . . . provide to the Commissioner of Public Safety the person's name, date of release into the com-

munity, anticipated residence address, if known, and criminal history record, any known treatment history of such person, any electronic mail address, instant message address or other similar Internet communication identifier for such person, if known, and any other relevant information"). In 2006, the legislature added a provision also requiring the courts to provide the department with "a written summary of the offense that includes the age and sex of any victim of the offense and a specific description of the offense." Public Acts 2006, No. 06-187, § 28 (b), codified at General Statutes § 54-256 (b). Thus, there is nothing in the statutory scheme specifically to indicate that the information sought by Wood is maintained by the department.

Because, however, the legislature has vested the commissioner of public safety with the authority to determine what information constitutes "identifying characteristics" that must be obtained for each registrant; see General Statutes § 54-250 (3); we also must consider whether the commission has required the submission of the information sought in the present case. The "Sex Offender Registry—Registration Form" promulgated by the department indicates the scope of such information. That form requires information that can be categorized as descriptive information about the registrant; the crimes requiring registration, contact and location information for the registrant, and conviction data.[4] Of the information sought in the present case, only the court name and location is listed on that form.[5]

[4] Information relating to a sex offender's conviction consists entirely of the following information: crimes requiring registration; duration of registration; place of crime; arresting agency; local case number; date of release; current status vis-á-vis probation or parole; inmate number; court name, geographic area and location; conviction date; and docket number.

[5] Indeed, under the predecessor scheme to the current Megan's Law, the legislature specifically had directed the department to obtain the location of the court where the sex offender was convicted. See General Statutes (Rev. to 1997) § 54-102r (e), as amended by Public Acts 1997, No. 97-183, § 1 ("[t]he registration required by subsections [b] to [d], inclusive, of this section shall be in a form prescribed by the [department] and shall include

We also may assume that any information made available by the department to the public on the Internet is collected and maintained as part of the sex offender registry. A review of hundreds of records, however, has revealed that none of the information sought in the present case is posted on the Internet.

Finally, a review of the actual documents produced by the department in response to Wood's request, in their unredacted form, is particularly telling. They consist of the records of thirty-nine registrants who successfully obtained orders barring dissemination of their registration information. Of these registrants' records, almost one half do not bear any of the names sought by Wood.[6] None of the records have all or even most of the names sought. Therefore, it is not only clear that the names of the judge, clerks and attorneys are not *required* to be provided as part of the registration process, it also is clear that this information is not even routinely collected and maintained as a matter of *practice*.

Indeed, it would not advance the purposes of the sex offender registry for the department to collect the names of the judge, clerks, prosecuting attorney and defense attorney. The information mandated to be provided by the registrant, the courts or the relevant agen-

---

the following information about the person being registered, where applicable: [1] [n]ame, including all aliases used, [2] address, [3] social security number, [4] inmate number, [5] crime for which convicted or found not guilty by reason of mental disease or defect, [6] date and place of conviction or finding of not guilty by reason of mental disease or defect, [7] probation termination date or sentence termination date or date of termination of commitment to the Psychiatric Security Review Board, as the case may be, and [8] a complete description of the person including photograph and fingerprints").

[6] No party to the present litigation has claimed that the department did not make a good faith effort to comply with Wood's request for the information pursuant to the act. Accordingly, I assume that the unredacted records submitted to the court include any and all materials in the department's possession that contain the requested information.

cies clearly serves one of the following purposes: aiding the public and law enforcement in identifying the registrant and assessing the risk he poses; deterring the registrant from engaging in future criminal acts by his knowledge that this information is accessible to others; and facilitating the accurate administration of the registry scheme. See *State* v. *Arthur H.*, 288 Conn. 582, 592–93, 953 A.2d 630 (2008) ("Megan's Law was enacted to alert the public by identifying potential sex offender recidivists and was based on the view that sex offenders have a greater likelihood to reoffend than other criminal actors" [internal quotation marks omitted]); see also National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,051–38,061 (July 2, 2008) (explaining law enforcement uses and deterrent purposes for collecting certain information not publicly available); J. Comparet-Cassani, "A Primer on the Civil Trial of a Sexually Violent Predator," 37 San Diego L. Rev. 1057, 1061 (Fall 2000) ("[t]he registration requirement is intended to control crime and prevent recidivism by making sex offenders readily available for police surveillance at all times"). None of these purposes is advanced by providing the names of the judge, clerks, prosecuting attorney and defense attorney.

This conclusion is bolstered by a review of the sex offender registries of other jurisdictions. The federal government and every other state has a sex offender registration scheme.[7] J. Comparet-Cassani, supra, 37 San Diego L. Rev. 1063. Several states require information relating to the location of the court where the offender entered his plea or was convicted. See B. Smith, "Fifty State Survey of Adult Sex Offender Registration Laws" (August 1, 2009), available at http://

---

[7] Federal law mandates that each jurisdiction must have a sex offender registry and conditions the receipt of certain federal funds on compliance with the minimum standards set forth under federal law. See 42 U.S.C. § 14071 (g); see also 42 U.S.C. § 16918.

ssrn.com/abstract=1517369 (last visited October 18, 2010).[8] None of these jurisdictions requires the collection of the names of any of the persons involved in the criminal proceedings.

In sum, although the name and location of the court seem to fall squarely within the scope of registration information under our Megan's Law and thus would be shielded from a freedom of information request by the court's nondissemination order, there is no objective evidence to support a similar conclusion with respect to the names of the persons involved in the criminal proceedings. Accordingly, the mere fact that, on an ad hoc basis, the department's records contain *some* documents that include *some* of the names of persons involved in the criminal proceedings for *some* of the registrants who had obtained nondissemination orders does not mean that those names are part of the registry. The department's *records* are not the statutory equivalent to the sex offender *registry*.

I am mindful of the department's concern that disclosure of these names could, with additional freedom of information requests and considered effort, eventually lead to the identity of the victim, which would undermine the purpose of the court order. I also am mindful, however, that the victims' identities are not shielded during the underlying court proceedings and that the public has a right to inspect the records of such criminal cases, barring a sealing order. See *Hartford Courant Co.* v. *Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) (docket sheets are presumptively open to public, and public and press have qualified first amendment right to inspect them); *State* v. *Ross*, 208 Conn. 156, 158, 543 A.2d 284

---

[8] This survey reveals that the following states specifically require by statute information relating to the court's location: Alaska; Idaho; Illinois; Indiana; Kansas; Louisiana; Maryland; Mississippi; Missouri; Nebraska; Nevada; New Jersey; New Mexico; Oklahoma, Tennessee; Virginia; Washington; Wisconsin; and Wyoming.

(1988) (public and press have right of access to court records); *State* v. *Ross*, supra, 159 (noting first amendment interest of public and press in "full access to all aspects of criminal proceedings"); see also Practice Book § 11-20A (a) ("[e]xcept as otherwise provided by law, there shall be a presumption that documents filed with the court shall be available to the public"). For other reasons, however, I am convinced that, although the names sought are not registration information within the meaning of § 54-255, this information is not a public record and therefore is not subject to the act.

My review of the unredacted records produced by the department reveals that these records are sent by the court to the department solely to inform the department that the court has entered a nondissemination order. These records come in various forms—in some cases, they are simply a nondissemination application signed by the court; in other cases, they are a mittimus or an information containing, among other notations relating to the court proceedings, a notation that the court has entered the nondissemination order. These court records, before they leave the court, are not public records subject to the act. See *Clerk of the Superior Court* v. *Freedom of Information Commission*, 278 Conn. 28, 53, 895 A.2d 743 (2006) (concluding "that, for purposes of the act, the judicial branch's administrative functions consist of activities relating to its budget, personnel, facilities and physical operations and that records unrelated to those activities are exempt"). It is my view that it would be entirely incongruous to conclude that information that is *not* a public record subject to the act becomes a public record when transmitted to an agency *solely* for the purpose of communicating an order to *bar* public dissemination of information. Therefore, in light of the particular context in which the department obtains this information, I would conclude that the names of the judge, clerks and attorneys to the

underlying criminal proceedings leading to sex offender registration do not become public records when that information occasionally is transmitted to the department.

Accordingly, I respectfully concur in the judgment.

