******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* WILLIAM WEBBER
## (AC 46150)

Bright, C. J., and Clark and Prescott, Js.

*Syllabus*

Pursuant to statute (§ 54-255 (c)), "[a]ny person who . . . (5) has been convicted or found not guilty by reason of mental disease or defect of any crime between October 1, 1988, and September 30, 1998, which requires [sexual offender] registration . . . and (A) served no jail or prison time as a result of such conviction or finding of not guilty by reason of mental disease or defect, (B) has not been subsequently convicted or found not guilty by reason of mental disease or defect of any crime which would require [sexual offender] registration . . . and (C) has registered with the Department of Emergency Services and Public Protection [as required]; may petition the court to order the Department of Emergency Services and Public Protection to restrict the dissemination of the registration information to law enforcement" and "not make such information available for public access . . . provided the court finds that dissemination of the registration information is not required for public safety."

The acquittee appealed to this court from the trial court's denial of his petition to restrict the dissemination of his sexual offender registration information pursuant to § 54-255 (c) (5). In May, 1984, the acquittee was found not guilty by reason of mental disease or defect of two counts of sexual assault in the first degree, and, after a hearing, the court determined that he was mentally ill to the extent that his release would constitute a danger to himself or others. He was committed to the custody of the Commissioner of Mental Health for a maximum period of forty years. In July, 1985, the acquittee was placed under the jurisdiction of the Psychiatric Security Review Board. The board conditionally released the acquittee from confinement in July, 2007, after which he registered as a sexual offender pursuant to Megan's Law (§ 54-250 et seq.). The board terminated the acquittee's conditional release in October, 2012, and, in December, 2019, the board again conditionally released the acquittee from confinement. Three years later, the acquittee filed the petition at issue, arguing that, with the exception of the date that he was found not guilty by reason of mental disease or defect, he met all of the other statutory criteria in § 54-255 (c) (5), and distinguishing between him and the eligible offenders who fell within the statutory time frame would be arbitrary and contrary to the legislature's intention of mitigating the retroactive effects of Megan's Law and inconsistent with the equal protection clause of the United States constitution. The trial court denied the petition, concluding that, because the acquittee was acquitted outside of the date range set forth in § 54-255 (c) (5), the

court either lacked jurisdiction or did not have the ability to grant the relief that he sought. On appeal, the acquittee claimed that the trial court erred in concluding that it lacked jurisdiction over his petition and over his equal protection claim. In response, the state argued, inter alia, that, even if this court were to find that the trial court had jurisdiction over the acquittee's claims and that the date range criterion of § 54-255 (c) (5) lacked any rational basis, the acquittee's confinement in a hospital for psychiatric disabilities constituted jail or prison time served as a result of the finding of not guilty by reason of mental disease or defect, and, accordingly, the court's denial of the acquittee's petition could be upheld on the alternative ground that he failed to satisfy the criterion in § 54-255 (c) (5) (A). *Held*:

1. The trial court erred in concluding that it lacked jurisdiction over the acquittee's petition and his equal protection claim; the plain language of § 54-255 (c) clearly indicates that the trial court has statutory authority to grant the petition of any person who satisfies the statutory criteria, provided that the court also makes the requisite public safety finding, and, accordingly, the statutory criteria are not prerequisites to the court's jurisdiction to consider a petition but, instead, are essential facts that must be proven to invoke the court's statutory authority to order relief pursuant to § 54-255 (c) (5).

2. The acquittee could not prevail on his claim that the trial court improperly denied his petition, this court having found that, even if it were to agree with him on his equal protection argument, he still would not meet all of the requisite statutory criteria under § 54-255 (c) (5):

a. Contrary to the acquittee's argument that the terms "jail" and "prison" as used in § 54-255 (c) are plain and unambiguous and clearly do not include an acquittee confined to a hospital, this court concluded that, when properly read in context, the phrase "jail or prison time" in § 54-255 (c) (5) (A) is most reasonably construed to include confinement in a hospital for psychiatric disabilities: the legislature has not defined "prison" or "jail" in § 54-255 or § 54-250 but has, in the statute (§ 1-1 (w)) defining certain words and phrases used in the construction of statutes, defined "state prison" and "jail" as a correctional facility administered by the Commission of Correction but excluding a hospital for psychiatric disabilities, and, although the acquittee's interpretation was not unreasonable when the phrase "jail or prison time" is read in isolation from the remaining language in § 54-255 (c) (5) (A), the acquittee's interpretation ignored the fact that § 54-255 (c) (5) (A) does not disqualify only individuals who have been convicted of certain crimes and have served jail or prison time as a result of the conviction but also disqualifies individuals who have served jail or prison time as a result of a finding of not guilty by reason of mental disease or defect; moreover, at the time that the legislature amended § 54-255 to add the statutory language at issue, a court's authority to confine a person found not guilty by reason of mental disease or defect was limited to confinement in a

hospital for psychiatric disabilities pursuant to statute (§ 17a-582), the current revision of the statute retains that limitation, and the legislature is presumed to have been aware when drafting § 54-255 (c) (5) (A), and when making subsequent amendments without revising that language, that it is not legally possible for a person found not guilty by reason of mental disease or defect to serve time in a jail or prison, as those terms are defined in § 1-1 (w), as a result of such finding; furthermore, given the limitation on the confinement of acquittees in § 17a-582, rigidly interpreting "jail or prison time" in the manner advanced by the acquittee would mean that anyone found not guilty by reason of mental disease or defect of an offense requiring registration under Megan's Law would necessarily satisfy § 54-255 (c) (5) (A), an interpretation belied by the fact that, if the legislature had intended for those terms to have the narrow meaning advanced by the acquittee, it would have had no reason to include the phrase "as a result of such . . . finding of not guilty by reason of mental disease or defect" in § 54-255 (c) (5) (A), and, because this court must presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous, "jail or prison time" within § 54-255 (c) (5) (A) must be construed to include confinement in a psychiatric hospital pursuant to § 17a-582 (e) (1), as this is the only construction of the statutory language that gives effect to the text of § 54-255 (c) (5) (A) in its entirety.

b. This court's interpretation that the phrase "jail or prison time" in § 54-255 (c) (5) includes confinement in a psychiatric hospital is also consistent with the relevant legislative history and with the policy that the statute was designed to implement: concerns regarding the harm to society caused by sex crimes and the relatively high rate of recidivism among sex offenders led the legislature to require the registration not only of persons convicted of certain sexual offenses or offenses against minors but also of persons found not guilty by reason of mental disease or defect of such crimes, and, significantly, with one exception, the legislature has made no distinction in the registration requirements or the penalties for not complying with such requirements between convicted persons and those found not guilty by reason of mental disease or defect; moreover, the legislative history of various public acts amending Megan's Law, together with the plain language of § 54-255 (c), indicate that the legislature intended to allow offenders who had committed less serious, nonviolent offenses and were required to register, regardless of whether they were convicted or found not guilty by reason of mental disease or defect, to petition to restrict the dissemination of their registration information pursuant to that statute where the public dissemination of the offender's registration information was not required for public safety, and the legislative intent underlying the eligibility criteria in § 54-255 (c) (5) is thus most consistent with a broad construction of "jail or prison time" to include confinement in a hospital for psychiatric disabilities, as to construe that phrase to mean only confinement in a correctional

facility would potentially allow persons who committed the most serious and most violent sexual offenses to be removed from the public registry because they were confined in a hospital instead of in a correctional facility, a result that the legislature clearly did not intend.

c. The acquittee's argument that other statutory mechanisms prevent the release of acquittees who pose a public safety risk, and that it is therefore unnecessary to the public safety purpose of Megan's Law to include those persons within the scope of § 54-255 (c) (5) (A), was unavailing: although the acquittee pointed to the fact that the state may petition pursuant to statute (§ 17a-593) for the continued commitment of acquittees perceived to pose a danger to the public and that those ordered released by the board would have already been determined by providers to not pose a threat to oneself or others, the acquittee disregarded the fact that an acquittee who is conditionally released from confinement, rather than discharged, is by definition a person whose final discharge would constitute a danger to himself or others but who can be adequately controlled with available supervision and treatment on conditional release, and the legislature's decision to require the registration of persons found not guilty by reason of mental disease or defect following their release from confinement indicates that the legislature was indeed concerned about the public safety risk that those persons posed upon their release despite the existence of the statutory mechanisms to which the acquittee referred; moreover, the acquittee's argument that the requirement that courts must make a public safety finding to grant a petition under § 54-255 (c) (5) similarly alleviates the public safety concern associated with restricting the public dissemination of acquittees' registration information could also be made as to persons who served jail or prison time as a result of a conviction of a crime requiring registration under Megan's Law, and the legislative history reflects that the legislature concluded that individuals who had been confined, whether in a correctional facility or in a hospital, posed an inherently greater risk to public safety upon release, such that courts should not have discretion to make their own findings regarding the necessity of publicizing such offenders' registration information, which finds support in the legislature's choice to depart from the language in an earlier revision of § 54-255 that more broadly authorized courts to release a sexually violent offender from the registration obligation whenever that person had maintained his or her registration for at least ten years and the court found that he did not suffer from a mental abnormality or personality disorder that made him likely to engage in sexually violent offenses; furthermore, although the acquittee attempted to distinguish offenders who are acquitted and confined from offenders who are convicted and confined, there is no indication in the legislative history that the legislature believed that offenders who were confined in a hospital for psychiatric disabilities were inherently less dangerous than those who were confined in a correctional facility such that, assuming all other

statutory criteria are satisfied, only the former should be eligible to petition to restrict the dissemination of their registration information, and, instead, the legislature's clear reference in § 54-255 (c) (5) (A) to conviction or finding of not guilty by reason of mental disease or defect evidences an intent that the criterion to have served no jail or prison time would be effective as to both classes of offenders; additionally, this court was not persuaded by the acquittee's argument that adopting the state's interpretation of the statute would lead to the absurd result of conflating punishment with treatment and blurring the lines between the Department of Correction and the board, as the Supreme Court has recognized that the registration requirement is regulatory and not punitive in nature and, thus, prohibiting offenders from petitioning to restrict the dissemination of their registration information if they do not meet the statutory criteria is not a punishment but instead serves to advance the legislature's nonpunitive goals of protecting the public and facilitating future law enforcement efforts.

3. Because the issue of whether the trial court properly denied the acquittee's petition could be resolved on statutory grounds, this court did not reach the merits of the acquittee's constitutional claim.

Argued November 6, 2023—officially released April 23, 2024

*Procedural History*

Petition to restrict the dissemination of the acquittee's sexual offender registration information, brought to the Superior Court in the judicial district of New Haven, where the court, *Harmon, J.*, rendered judgment denying the petition, from which the acquittee appealed to this court. *Affirmed.*

*James E. Mortimer*, assigned counsel, for the appellant (acquittee).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, and *Rocco A. Chiarenza*, senior assistant state's attorney, and *Melissa R. Holmes*, assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, C. J. The acquittee,[1] William Webber, appeals from the judgment of the trial court denying

___

[1] " 'Acquittee' means any person found not guilty by reason of mental disease or defect pursuant to section 53a-13 . . . ." General Statutes § 17a-580 (1).

his petition to restrict the dissemination of his sexual offender registration information pursuant to General Statutes § 54-255 (c) (5).[2] On appeal, the acquittee claims that (1) the court erred in concluding that it lacked jurisdiction over his petition and (2) the statutory exclusion of his petition violates the equal protection clauses of the federal and state constitutions. Although we agree with the acquittee that the court had jurisdiction over his petition, we nonetheless conclude that the court properly denied his petition because, even if we were to agree with him on his equal protection argument, he still would not meet all of the requisite statutory criteria under § 54-255 (c) (5). Accordingly, we affirm the judgment of the trial court on this alternative ground.

The record reveals the following undisputed facts and procedural history. On May 23, 1984, the court, *Norcott, J.*, found the acquittee not guilty by reason of mental disease or defect[3] of two counts of sexual assault

---

[2] "Section 54-255 authorizes a trial court to restrict the dissemination of registration information pertaining to persons who are convicted or found not guilty by reason of mental disease or defect of certain sex offenses and offenses against minors, upon the granting of the offender's petition to restrict the dissemination of such information." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 721, 6 A.3d 763 (2010).

[3] "Prior to 1981, a criminal defendant who prevailed on an insanity defense was deemed to be 'acquitted on the grounds of mental disease or defect.' Public Acts 1981, No. 81-301, § 2, changed this standard to 'guilty but not criminally responsible on the grounds of mental disease or defect.' This standard was changed again in 1983 to its present form, 'not guilty by reason of mental disease or defect,' by Public Acts 1983, No. 83-486, § 2. . . . This change became effective on October 1, 1983 . . . ." *State* v. *Putnoki*, 200 Conn. 208, 211 n.2, 510 A.2d 1329 (1986). In the present case, "[p]rior to the receipt of evidence, the court agreed with counsel for the [acquittee] that, given the fact that the events in question took place on August 7, 1983, the legal standard of insanity to be applied to this case was that standard as set forth in . . . General Statutes [Rev. to 1983] § 53a-13 . . . ." For the sake of clarity and because it does not affect our analysis, we use the terminology from the current revision of the statute.

in the first degree pursuant to General Statutes (Rev. to 1983) § 53a-70.[4] Following a hearing before the court, *Kinney*, *J.*, on August 27, 1984, the court found that the acquittee was "mentally ill to the extent that his release would constitute a danger to himself or others" and committed him to the custody of the Commissioner of Mental Health (now the Commissioner of Mental Health and Addiction Services) for a maximum period of forty years pursuant to General Statutes (Rev. to 1983) § 53a-47 (a) and (b).[5] In July, 1985, the acquittee was placed under the jurisdiction of the Psychiatric Security Review Board (board). The board condition-ally released the acquittee from confinement on July

[4] General Statutes (Rev. to 1983) § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

[5] General Statutes (Rev. to 1983) § 53a-47 provides in relevant part: "(a) (1) When any person charged with an offense is found guilty but not criminally responsible on the grounds of mental disease or defect, the court shall order such person to be temporarily confined in any of the state hospitals for mental illness for a reasonable time, not to exceed ninety days, for an examination to determine his mental condition . . . . (3) Within sixty days of the confinement pursuant to subdivision (1), the superintendent of such hospital and the retained psychiatrist, if any, shall file reports with the court setting forth their findings and conclusions as to whether such person is mentally ill to the extent that his release would constitute a danger to himself or others. . . . (4) Upon receipt of such reports, the court shall promptly schedule a hearing. If the court determines that the preponderance of the evidence at the hearing establishes that such person is mentally ill to the extent that his release would constitute a danger to himself or others, the court shall confine such person in a suitable hospital or other treatment facili-ty.

"(b) Whenever a person is committed for confinement pursuant to subdivi-sion (4) of subsection (a), his confinement shall continue until he is no longer mentally ill to the extent that his release would constitute a danger to himself or others, provided the total period of confinement, except as provided in subsection (d), shall not exceed a maximum term fixed by the court at the time of confinement, which maximum term shall not exceed the maximum sentence which could have been imposed if the person had been convicted of the offense. . . ."

17, 2007, after which the acquittee registered as a sexual offender with the Department of Emergency Services and Public Protection (department) pursuant to Megan's Law, General Statutes § 54-250 et seq.[6] After learning that the acquittee was in possession of pornography, the board revoked the acquittee's conditional release in May, 2012. Following a hearing, the board terminated the acquittee's conditional release and returned him to confinement on October 1, 2012, on the basis that he would be most safely treated in an inpatient hospital setting. On December 10, 2019, the board again conditionally released the acquittee from confinement.

On August 8, 2022, the acquittee filed a petition with the court, *Harmon*, *J.*, pursuant to § 54-255 (c) (5), seeking an order directing the department to restrict the dissemination of his registration information for law enforcement purposes only, such that it would no longer be available for public access. In support of his petition, the acquittee argued that, with the exception of the date that he was found not guilty by reason of mental disease or defect, he meets all of the other statutory criteria to petition for the restriction of the dissemination of his registration information, including

_____

[6] In particular, the acquittee registered pursuant to General Statutes § 54-252 (a) (2), which provides in relevant part: "Any person who has been convicted or found not guilty by reason of mental disease or defect of a sexually violent offense, and . . . is released into the community on or after October 1, 1998, shall, within three days following such release . . . register such person's name, identifying factors and criminal history record, documentation of any treatment received by such person for mental abnormality or personality disorder, and such person's residence address and electronic mail address, instant message address or other similar Internet communication identifier, if any, with the Commissioner of Emergency Services and Public Protection on such forms and in such locations as said commissioner shall direct, and shall maintain such registration for life. . . ."

Although § 54-252 has been amended since the acquittee was first required to register in 2007; see Public Acts, Spec. Sess., June, 2007, No. 07-4, § 91; Public Acts 2011, No. 11-51, § 134 (a); Public Acts 2015, No. 15-211, § 6; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

that he (1) has served no jail or prison time as a result of the finding of not guilty by reason of mental disease or defect, (2) has not subsequently been convicted or found not guilty by reason of mental disease or defect of any crime that would require registration under Megan's Law, and (3) has registered with the department as required by Megan's Law. The acquittee also noted that "under the terms of his conditional release, [he] does not present a threat to public safety requiring the dissemination of his registration information." The acquittee acknowledged that § 54-255 (c) (5) is "arguably not directly applicable" to him because he was acquitted prior to October 1, 1988, and not between October 1, 1988, and September 30, 1998, as the statutory remedy requires. Nonetheless, he maintained that, because he meets all of the other statutory criteria, distinguishing "between [him] and the eligible offenders [who fall] within the statutory time frame would be arbitrary and contrary to the legislature's intention of mitigating the retroactive effects [of Megan's Law] and inconsistent with the equal protection clause . . . of the United States constitution."

The court held a hearing on the acquittee's petition on December 1, 2022. The state opposed the petition, arguing that the court could not grant the acquittee any relief under the current statutory framework. The court agreed with the state, concluding that, because the acquittee was acquitted outside of the date range set forth in § 54-255 (c) (5), the court either lacked jurisdiction or did not "have the ability" to grant the relief that he sought. Accordingly, the court denied the petition.[7] This appeal followed.

I

The acquittee first claims that the trial court erred in concluding that it lacked jurisdiction over his petition

---

[7] The court circled "denied" on the order page of the acquittee's petition.

to restrict the dissemination of his registration information and over his claim that the statutory exclusion of his petition to restrict the dissemination of his registration information violates his right to equal protection. According to the acquittee, the court had jurisdiction over his petition and his equal protection claim because "§ 54-255 (c) explicitly vests with the court the power to restrict the dissemination of registration information to law enforcement" and "the fourteenth amendment to the United States constitution and article first, § 20, of the Connecticut constitution provide courts with the authority to strike down laws that violate their respective equal protection provisions."

In response, the state argues that the acquittee's failure to satisfy two of the criteria set forth in § 54-255 (c) (5)—namely, the requirements to have been found not guilty by reason of mental disease or defect between October 1, 1988, and September 30, 1998, and to have served no jail or prison time as a result of such finding—deprived the court of jurisdiction to entertain the petition. Additionally, the state argues that the court's inherent authority to strike down laws that violate constitutional principles does not confer jurisdiction on the court to consider an equal protection claim raised in a petition that the court lacked jurisdiction to consider in the first place. Therefore, according to the state, the court should have dismissed rather than denied the petition. We agree with the acquittee that the court had jurisdiction to consider his petition.

"As a preliminary matter, we note that [i]t is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . When reviewing an issue of subject matter jurisdiction on appeal, [w]e have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question

of law, our review is plenary. . . . Subject matter juris-diction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceed-ings, including on appeal." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 770, 143 A.3d 578 (2016).

In the present case, the court concluded, on the basis of the date range criterion in § 54-255 (c) (5), that it "lack[ed] jurisdiction to change . . . the information being only available to the police department versus the general public at this time, and . . . [did not] have the ability to grant [the acquittee] the relief that [he was] seeking . . . ." Despite the court's statement as to jurisdiction, it denied, rather than dismissed, the acquittee's petition.

We previously have noted "the ongoing confusion as to whether the failure to plead or prove an essential fact [for purposes of invoking a statutory remedy] implicates the [tribunal's] subject matter jurisdiction or its statu-tory authority. . . . [O]nce it is determined that a tribu-nal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . [T]he question of whether the action belongs to the class of cases that the tribunal has author-ity to decide is [s]eparate and distinct from . . . the question of whether a [tribunal] . . . properly exer-cises its statutory authority to act. . . . A challenge to the tribunal's statutory authority raises a claim of statutory construction that is not jurisdictional. . . . [A] claim that a party has failed to allege or to establish

an element of a statutory remedy implicates the tribunal's statutory authority and the legal sufficiency of the complaint, not the tribunal's subject matter jurisdiction." (Citation omitted; internal quotation marks omitted.) *Bridgeport* v. *Freedom of Information Commission*, 222 Conn. App. 17, 39–40, 304 A.3d 481 (2023), cert. denied, 348 Conn. 936, 306 A.3d 1072 (2024).

Pursuant to § 54-255 (c), any person who meets the criteria set forth in subdivision (5) "may petition the court to order the [department] to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access." The court then "may order the [department] to restrict the dissemination of the registration information . . . provided the court finds that dissemination of the registration information is not required for public safety." General Statutes § 54-255 (c). The statute's plain language clearly indicates that the trial court has statutory authority to grant the petition of any person who satisfies the statutory criteria, provided that the court also makes the requisite public safety finding. We conclude that the statutory criteria are not prerequisites to the court's jurisdiction to consider a petition but instead are essential facts that must be proven to invoke the court's statutory authority to order relief pursuant to § 54-255 (c). See *Bridgeport* v. *Freedom of Information Commission*, supra, 222 Conn. App. 41 (whether essential fact that goes to merits of complaint has been established does not implicate tribunal's jurisdiction); see also *New England Retail Properties, Inc.* v. *Maturo*, 102 Conn. App. 476, 481–82, 925 A.2d 1151 (under statute prohibiting commencement of suit unless and until legal claim is rejected by estate, defendant's claim that estate had not rejected plaintiff's legal claim did not implicate court's subject matter jurisdiction but, rather, its statutory authority),

cert. denied, 284 Conn. 912, 931 A.2d 932 (2007). Accordingly, in the present case, because the court determined that the acquittee simply failed to satisfy the statutory criteria under § 54-255 (c) (5), the court incorrectly stated that it lacked jurisdiction to entertain the petition.

## II

The acquittee next claims that the statutory exclusion of his petition to restrict the dissemination of his registration information violates the equal protection clauses of the federal and state constitutions. In particular, the acquittee claims that the date range criterion set forth in § 54-255 (c) (5) violates his right to equal protection because there is no rational basis for the statutory distinction between offenders who were convicted or found not guilty by reason of mental disease or defect between October 1, 1988, and September 30, 1998, and otherwise similarly situated offenders like himself who were convicted or found not guilty by reason of mental disease or defect prior to October 1, 1988. According to the acquittee, "[b]ut for the date of [his] conduct, he would be eligible to petition the court" to restrict the dissemination of his registration information.

The state argues that we should not reach the acquittee's equal protection claim because, even if we were to agree that the date range criterion lacks any rational basis, the court's denial of the acquittee's petition can be upheld on the alternative ground that he does not satisfy the criterion in § 54-255 (c) (5) (A)— that is, that he "served no jail or prison time as a result of [the] . . . finding of not guilty by reason of mental disease or defect . . . ." See *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 599, 790 A.2d 1178 (2002) ("[w]e . . . may affirm the court's judgment on a dispositive alternate ground for which there is support

in the trial court record" (internal quotation marks omitted)).

We agree with the state that we should address the acquittee's constitutional claim only if we first determine that he meets the other statutory requirements for the court to grant his petition. We "do not engage in addressing constitutional questions unless their resolution is unavoidable." *State* v. *McCahill*, 261 Conn. 492, 501, 811 A.2d 667 (2002). Accordingly, "[i]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the [c]ourt will decide only the latter." (Internal quotation marks omitted.) *State* v. *Graham S.*, 149 Conn. App. 334, 343, 87 A.3d 1182, cert. denied, 312 Conn. 912, 93 A.3d 595 (2014). We thus turn to the interpretation of the statutory criteria.

"The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, presents a question of law over which our review is plenary." (Internal quotation marks omitted.) *Village Apartments, LLC* v. *Ward*, 169 Conn. App. 653, 659, 152 A.3d 76 (2016), cert. denied, 324 Conn. 918, 154 A.3d 1008 (2017). In construing § 54-255, "our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is

not plain and unambiguous, we also look for interpretative guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *State* v. *Drupals*, 306 Conn. 149, 159, 49 A.3d 962 (2012).

"[W]e consider the statute as a whole with a view toward reconciling its parts in order to obtain a sensible and rational overall interpretation." (Internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 269 Conn. 802, 813, 850 A.2d 114 (2004). "We are . . . guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . [T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [nonaction] will have upon any one of them." (Internal quotation marks omitted.) *500 North Avenue, LLC* v. *Planning Commission*, 199 Conn. App. 115, 130–31, 235 A.3d 526, cert. denied, 335 Conn. 959, 239 A.3d 320 (2020). "Legislation never is written on a clean slate, nor is it ever read in isolation or applied in a vacuum. Every new act takes its place as a component of an extensive and elaborate system of written laws. . . . Construing statutes by reference to others advances [the values of harmony and consistency within the law]. In fact, courts have been said to be

under a duty to construe statutes harmoniously where that can reasonably be done. . . . Moreover, statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . ." (Internal quotation marks omitted.) *State* v. *Agron*, 323 Conn. 629, 638, 148 A.3d 1052 (2016).

In accordance with § 1-2z, we begin our analysis with the text of the statute and its relationship to other statutes to ascertain whether the statutory language is susceptible to more than one reasonable interpretation. Section 54-255 (c) provides in relevant part: "Any person who . . . (5) has been convicted or found not guilty by reason of mental disease or defect of any crime between October 1, 1988, and September 30, 1998, which requires registration under sections 54-250 to 54-258a, inclusive, and (A) *served no jail or prison time as a result of such conviction or finding of not guilty by reason of mental disease or defect*, (B) has not been subsequently convicted or found not guilty by reason of mental disease or defect of any crime which would require registration under sections 54-250 to 54-258a, inclusive, and (C) has registered with the [department] in accordance with sections 54-250 to 54-258a, inclusive; may petition the court to order the [department] to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access. . . ." (Emphasis added.)

It is undisputed that the acquittee satisfies § 54-255 (c) (5) (B) and (C) because, since his acquittal in 1984, he has not been convicted or found not guilty by reason of mental disease or defect of another crime requiring registration under Megan's Law and he has registered with the department. The parties disagree, however, as to whether the acquittee's confinement in a hospital for psychiatric disabilities constitutes "jail or prison time [served] as a result of [the] . . . finding of not guilty

by reason of mental disease or defect" within the meaning of § 54-255 (c) (5) (A) such that he does not satisfy that criterion.

On appeal, the acquittee argues that the terms "jail" and "prison" as used in § 54-255 (c) "are plain and unambiguous and clearly do not include an 'acquittee' confined to a 'hospital.'" In support of this argument, the acquittee cites judicial opinions and other statutes that distinguish between correctional facilities and hospitals for psychiatric disabilities.[8] The state argues, however, that "in order not to frustrate evident legislative intent, and to arrive at a rational and sensible result, the phrase 'jail or prison time' must be construed generally to mean a period of lawfully ordered confinement or captivity," including in a hospital for psychiatric disabilities. We agree with the state that, when properly read in context, the phrase "jail or prison time" in § 54-255 (c) (5) (A) is most reasonably construed to include

---

[8] Specifically, the acquittee draws our attention to four distinctions that our courts and legislature have made. First, our Supreme Court, in concluding that the phrase "other facility" as used in the patients' bill of rights, General Statutes §§ 17a-540 through 17a-550, was not broad enough to include correctional facilities, recognized that "[n]either hospitals nor clinics are ordinarily considered to be synonymous with prisons or correctional institutions." *Wiseman* v. *Armstrong*, supra, 269 Conn. 813. Second, our Supreme Court has distinguished between the treatment focused purpose of the commitment of an acquittee and the punitive purpose of a criminal sentence. See *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 404, 780 A.2d 903 (2001) ("commitment, unlike a criminal sentence, is not a sanction or penalty but, rather, a vehicle pursuant to which the court can ensure that [an acquittee] . . . will receive treatment for his or her mental disease or defect"). Third, the definition of "hospital for psychiatric disabilities" under General Statutes § 17a-580 (6) explicitly excludes "any correctional institution of the state . . . ." Last, in other parts of the General Statutes, the legislature has established separate definitions for an inmate or prisoner and an acquittee, the former being defined as "any person in the custody of the Commissioner of Correction or confined in any institution or facility of the Department of Correction . . ."; General Statutes § 18-84; and the latter as "any person found not guilty by reason of mental disease or defect pursuant to section 53a-13 . . . ." General Statutes § 17a-580 (1).

confinement in a hospital for psychiatric disabilities pursuant to General Statutes § 17a-582 (e) (1).[9]

The legislature has not defined either "prison" or "jail" in § 54-255 or in § 54-250, which sets forth definitions for other words and phrases used in Megan's Law. In addition, we have found no appellate case law interpreting these terms as they are used in § 54-255. Although neither party has addressed it, the legislature has defined "state prison" and "jail" in General Statutes § 1-1 (w) as "a correctional facility administered by the Commissioner of Correction." This definition plainly excludes a hospital for psychiatric disabilities, which General Statutes § 17a-580 (6) defines as "any public or private hospital, retreat, institution, house or place in which a person with psychiatric disabilities or drug-dependent person is received or detained as a patient, *but does not include any correctional institution of the state* . . . ."[10] (Emphasis added.)

Given the definition in § 1-1 (w), and the other authorities cited by the acquittee; see footnote 8 of this opinion; the acquittee's interpretation is not unreasonable when the phrase "jail or prison time" is read in isolation from the remaining language in § 54-255 (c) (5) (A). See *Palosz* v. *Greenwich*, 184 Conn. App. 201, 213, 194 A.3d 885 (noting that "the legislature is presumed to be aware

---

[9] General Statutes § 17a-582 provides in relevant part: "(a) When any person charged with an offense is found not guilty by reason of mental disease or defect pursuant to section 53a-13 . . . (d) [t]he court shall commence a hearing . . . . (e) At the hearing, the court shall make a finding as to the mental condition of the acquittee and, considering that its primary concerns are the protection of society and the safety and well-being of the acquittee, make one of the following orders:

"(1) If the court finds that the acquittee is a person who should be confined or conditionally released, the court shall order the acquittee committed to the jurisdiction of the board and . . . confined in a hospital for psychiatric disabilities . . . ."

[10] This statutory definition was the same when the legislature amended § 54-255 to add the statutory language at issue. See General Statutes (Rev. to 1999) § 17a-580 (6) (defining "[h]ospital for mental illness").

of the common law when it enacts statutes" and that "[w]e presume that laws are enacted in view of existing statutes" (internal quotation marks omitted)), cert. denied, 330 Conn. 930, 194 A.3d 778 (2018). Nevertheless, the acquittee's interpretation ignores the fact that § 54-255 (c) (5) (A) does not disqualify only individuals who have been *convicted* of certain crimes and have served jail or prison time as a result of the conviction. It also disqualifies individuals who have served jail or prison time "as a result of such . . . finding of not guilty by reason of mental disease or defect . . . ." General Statutes § 54-255 (c) (5) (A). The question, then, is whether the acquittee's interpretation of the statute renders this clause meaningless if persons found not guilty by reason of mental disease or defect cannot, as a matter of law, be confined in a prison or jail as defined in § 1-1 (w) and as argued by the acquittee. "It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute." (Internal quotation marks omitted.) *State* v. *Gibbs*, 254 Conn. 578, 602, 758 A.2d 327 (2000); see also *Commissioner of Environmental Protection* v. *Mellon*, 286 Conn. 687, 692 n.7, 945 A.2d 464 (2008) ("[s]ection 1-2z does not require the courts to ignore the fact that the application of a statutory definition would render redundant certain language in the statute under review").

To answer this question, it is necessary to review the statutory scheme that provides for the confinement of persons found not guilty by reason of mental disease or defect. At the time that the legislature amended § 54-255 to add the statutory language at issue,[11] a court's

---

[11] Section 54-255 was revised to add the statutory language at issue in 1999; see Public Acts 1999, No. 99-183, § 6; and has retained that language following several amendments. See Public Acts 2001, No. 01-211, § 2; Public Acts 2002, No. 02-89, § 87; Public Acts 2005, No. 05-146, § 6; Public Acts 2011, No. 11-51, § 134; Public Acts 2019, No. 19-189, § 41.

authority to confine a person found not guilty by reason of mental disease or defect was limited to confinement in a hospital for psychiatric disabilities. Specifically, General Statutes (Rev. to 1999) § 17a-582 (e) (1) provides in relevant part: "If the court finds that the acquittee is a person who should be confined or conditionally released, the court shall order the acquittee committed to the jurisdiction of the board and either confined in a hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation [now the Commissioner of Developmental Services], for custody, care and treatment . . . ." The current revision of the statute retains this limitation. See General Statutes § 17a-582 (e) (1). The legislature is presumed to have been aware when drafting § 54-255 (c) (5) (A), and when making subsequent amendments without revising that language, that it is not legally possible for a person found not guilty by reason of mental disease or defect to serve time in a jail or prison, as those terms are defined in § 1-1 (w), as a result of such finding. See *500 North Avenue, LLC* v. *Planning Commission*, supra, 199 Conn. App. 130–31 ("[t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [nonaction] will have upon any one of them" (internal quotation marks omitted)).

Given the limitation in § 17a-582, rigidly interpreting "jail or prison time" in the manner advanced by the acquittee would mean that anyone found not guilty by reason of mental disease or defect of an offense requiring registration under Megan's Law would necessarily satisfy § 54-255 (c) (5) (A). Thus, if the legislature had intended for those terms to have the narrow meaning advanced by the acquittee, it would have had no reason to include the phrase "as a result of such . . . finding of not guilty by reason of mental disease or defect" in § 54-255 (c) (5) (A). Consequently, the acquittee's

interpretation of the statute renders that phrase meaningless. Because "we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous"; *Megos* v. *Ranta*, 179 Conn. App. 546, 552, 180 A.3d 645, cert. denied, 328 Conn. 917, 180 A.3d 961 (2018); we conclude that "jail or prison time" within § 54-255 (c) (5) (A) must be construed to include confinement in a psychiatric hospital pursuant to § 17a-582 (e) (1). This is the only construction of the statutory language that gives effect to the text of § 54-255 (c) (5) (A) in its entirety.[12]

In an effort to avoid this conclusion, the acquittee argues that there are two scenarios in which an acquittee could be required to serve time specifically in a jail or prison that would give meaning to the statutory language. First, he argues that "an individual may be found [not guilty by reason of mental disease or defect] of one offense requiring registration but guilty on others, receiving a sentence that provides for a term of incarceration." Second, the acquittee asserts that a person may be confined in a hospital for psychiatric disabilities as a result of being found not guilty by reason of mental disease or defect and, while so confined, commit an offense for which he is convicted and transferred to a correctional facility. The problem with both of these scenarios is that § 54-255 (c) (5) (A) requires that a person must have served no jail or prison time "as a result of" being found not guilty by reason of mental disease or defect. In the acquittee's two hypothetical

---

[12] For the same reason, we also reject the acquittee's argument that, if the legislature had intended for the phrase "jail or prison time" to include confinement of an acquittee in a hospital for psychiatric disabilities, "it would have made mention of 'acquittees committed to a hospital for psychiatric disabilit[ies]' or used analogous language." We reiterate that the legislature's express inclusion of persons found not guilty by reason of mental disease or defect in that provision demonstrates that the legislature did not intend for the phrase "jail or prison time" to be so narrowly construed such that it has no meaning as to those persons.

scenarios, the jail or prison time is not the result of the not guilty finding. They thus fall outside of the circumstances that the statute is intended to address. For this reason, the acquittee's argument is unavailing.

Our interpretation also is consistent with the relevant legislative history and with the policy that the statute was designed to implement.[13] Although the legislative history does not directly address whether § 54-255 (c) (5) (A) was intended to encompass confinement in a hospital for psychiatric disabilities, it is well established that, "[i]n determining the true meaning of a statute when there is genuine uncertainty as to how it should apply, identifying the problem in society to which the

---

[13] Although we conclude that the plain text of the statute, when properly read in context, strongly supports the state's interpretation of the statutory language, we also recognize that the acquittee's interpretation is not entirely implausible in light of the definition in § 1-1 (w). See *Commissioner of Environmental Protection* v. *Mellon*, supra, 286 Conn. 693 n.7 ("It is of course true that, when a statutory definition applies to a statutory term, the courts must apply that definition. The question in the present case, however, is whether the statutory definition applies in the first instance." (Emphasis omitted.)). The statutory language is therefore ambiguous in the sense that it is unclear from the text of the statute, and its relationship to other statutes, whether the legislature intended for the statutory definition in § 1-1 (w) to apply to § 54-255. Indeed, the legislature's decision to include the phrase "as a result of such . . . finding of not guilty by reason of mental disease or defect" in § 54-255 (c) (5) (A), for which a person cannot be sentenced to jail or prison, "raises doubt" as to whether the legislature intended for the definition in § 1-1 (w) to apply. *Commissioner of Environmental Protection* v. *Mellon*, supra, 692.

Accordingly, to the extent that any ambiguity remains following our analysis of the plain text and its relationship to other statutes, we may consider extratextual sources in determining the intended meaning of "jail or prison time" in § 54-255. Id., 692–93; see also *Soto* v. *Bushmaster Firearms International, LLC*, 331 Conn. 53, 118–19, 202 A.3d 262 (Although "the plaintiffs' interpretation of the . . . language [in a federal statute] [was] plainly the more reasonable one . . . [the court] recognize[d] that the defendants' interpretation [was] not implausible. Therefore . . . [the court] also review[ed] various extrinsic sources of congressional intent to resolve any ambiguities," which further supported court's interpretation of statutory language.), cert. denied sub nom. *Remington Arms Co., LLC,* v. *Soto,* U.S.    , 140 S. Ct. 513, 205 L. Ed. 2d 317 (2019).

legislature addressed itself by examining the legislative history of the statute under litigation is helpful." (Internal quotation marks omitted.) *State* v. *Victor O.*, 320 Conn. 239, 256, 128 A.3d 940 (2016). Our Supreme Court previously has set forth the circumstances that motivated the enactment of Megan's Law. "On July 29, 1994, Megan Kanka, a seven year old child, was abducted, raped, and murdered near her home. The man who confessed to Megan's murder lived in a house across the street from the Kanka family and had twice been convicted of sex offenses involving young girls. Megan, her parents, local police, and the members of the community were unaware of the accused murderer's history; nor did they know that he shared his house with two other men who had been convicted of sex offenses. . . . Statutes such as [§ 54-250 et seq.] are called Megan's Law, after Megan Kanka, [whose] sexual assault and murder . . . sparked enactment of sex offender registration and notification statutes in [the state of New Jersey] and several others. . . . Connecticut's sex offender registration and notification statutes were enacted [i]n response to concerns regarding the harm to society caused by sex crimes and the relatively high rate of recidivism among sex offenders . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Misiorski*, 250 Conn. 280, 290–92, 738 A.2d 595 (1999); see also 41 H.R. Proc., Pt. 11, 1998 Sess., p. 3718, remarks of Representative Michael Lawlor (discussing crimes against Megan Kanka that gave rise to Megan's Law). These concerns led the legislature to require the registration not only of persons convicted of certain sexual offenses or offenses against minors but also of persons found not guilty by reason of mental disease or defect of such crimes. See General Statutes §§ 54-251 through 54-254 (requiring registration of "[a]ny person who has been convicted or found not guilty by reason of mental disease or defect" of nonviolent sexual offense,

criminal offense against minor, sexually violent offense, sexual offense committed in another jurisdiction, or felony committed for sexual purpose). Significantly, with one exception, the legislature has made no distinction in the registration requirements or the penalties for not complying with them between convicted persons and those found not guilty by reason of mental disease or defect.[14]

Similarly, the legislative history of No. 99-183 of the 1999 Public Acts (P.A. 99-183), and the plain language of § 54-255 (c), indicate that the legislature intended to allow offenders who were required to register, regardless of whether they were convicted or found not guilty by reason of mental disease or defect, to petition pursuant to that statute only in limited circumstances where the public dissemination of the offender's registration information was not required for public safety. See General Statutes § 54-255 (c) ("[t]he court may order the [department] to restrict the dissemination of the registration information to law enforcement purposes only and to not make such information available for public access, *provided the court finds that dissemination of the registration information is not required for public safety*" (emphasis added)); 42 H.R. Proc., Pt. 11, 1999 Sess., p. 3883, remarks of Representative Michael Lawlor (§ 54-255 "gives the limited authority to a judge to withdraw the information from the Internet and from the public aspect of the registration . . . *if the court makes a finding that the public safety is not in any*

---

[14] The only exception is in General Statutes § 54-251 (a), which provides in relevant part that "any person who has one or more prior convictions of [a criminal offense against a minor or a nonviolent sexual offense] or who is convicted of a violation of subdivision (2) of subsection (a) of section 53a-70 shall maintain such registration for life," instead of for only ten years. Notably, however, the legislature has not distinguished between those convicted and those found not guilty by reason of mental disease or defect of a sexually violent offense, subjecting both to a lifetime registration requirement. See General Statutes § 54-252 (a).

*way in danger*" (emphasis added)). In particular, the legislature appears to have intended that only certain offenders who had committed less serious, nonviolent offenses would have the opportunity to petition the court to restrict the dissemination of their registration information. During the legislative debate in the House of Representatives on P.A. 99-183, Representative Lawlor stated that whether an offender was incarcerated as a result of his or her conviction—the relevant inquiry under § 54-255 (c) (5) (A)—generally is an "indication of how serious the crime was."[15] 42 H.R. Proc., supra, p. 3916. Additionally, in response to a concern raised about a particular individual who was required to register as a sex offender for committing sexual assault in the fourth degree, which is considered a "nonviolent sexual offense" under Megan's Law; see General Statutes § 54-250 (5); Representative Lawlor stated, "that's exactly the situation which is envisioned by the expanded discretion being provided to judges in the bill." 42 H.R. Proc., supra, pp. 3915–16.

The legislative intent underlying the eligibility criteria in § 54-255 (c) (5) is thus most consistent with a broad

---

[15] Representative Lawlor stated in relevant part: "For persons who have been convicted of crimes and fall under Megan's Law, in other words convictions dating back to 1988, assuming that was their one and only conviction and assuming they have never been subsequent[ly convicted], they were never incarcerated in connection with the original conviction and assuming they meet the other criteria outlined in the bill for future offenders, this gives the limited authority to a judge to withdraw the information from the Internet and from the public aspect of the registration, as long as they come forward and register first.

\* \* \*

"[I]f in fact that was the first and only conviction for a crime and if in fact a person was not incarcerated as a consequence of the conviction—*which is usually a[n] . . . indication of how serious the crime was*—and assuming the judge makes a finding that this is in the best interest of all involved and would not in any way affect public safety, then under those circumstances—even for the people who have already been required to register—the judge would have the discretion to undo that public aspect of the registration." (Emphasis added.) 42 H.R. Proc., supra, pp. 3883–3916.

construction of "jail or prison time" in § 54-255 to include confinement in a hospital for psychiatric disabilities. To construe that phrase to mean only confinement in a correctional facility would potentially allow persons who committed the most serious and most violent sexual offenses, such as sexual assault in the first degree, which is considered a "sexually violent offense" under Megan's Law; see General Statutes § 54-250 (11); to be removed from the public registry because they were confined in a hospital instead of in a correctional facility. This would be true, even when, as in this case, the acquittee's period of confinement lasted for decades. Given that the legislature clearly was concerned with maintaining the public registration of persons who had committed more serious offenses, this cannot be the result that the legislature intended. "We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 732, 6 A.3d 763 (2010).[16]

To the extent that the acquittee argues that other statutory mechanisms prevent the release of acquittees who pose a public safety risk, and that it is therefore unnecessary to the public safety purpose of Megan's Law to include those persons within the scope of § 54-255 (c) (5) (A), this does not change our conclusion.

---

[16] We acknowledge that the legislative history of P.A. 99-183 refers only to persons "convicted" or "incarcerated." See 42 H.R. Proc., supra, pp. 3882–83 (describing "persons who have been convicted of crimes and fall under Megan's Law" as eligible to petition under § 54-255 if "that was their one and only conviction . . . [and] they were never incarcerated in connection with the original conviction" and noting that lifetime registration requirement applies to "persons convicted of the most serious, most predatory types of sexual misconduct"). Nevertheless, the statute, as adopted, also expressly covers individuals found not guilty by reason of mental disease or defect. Thus, the legislative history must be read with this language in mind.

According to the acquittee, the state may petition "pursuant to General Statutes § 17a-593 for the continued commitment of acquittees perceived to pose a danger to the public. . . . [Additionally], those ordered released by the board would have already been determined by providers to not pose a threat to oneself or others. . . . Presumably, the legislature was familiar with . . . § 17a-593 (g)."[17] (Citations omitted.) We are not persuaded by the acquittee's argument for two reasons.

First, the acquittee disregards the fact that an acquittee who is conditionally released from confinement, rather than discharged, is a person whose "final discharge *would constitute a danger to himself or others* but who can be adequately controlled with available supervision and treatment on conditional release . . . ." (Emphasis added.) General Statutes § 17a-580 (9). It is therefore untrue that all acquittees released from confinement have been determined to pose no risk to themselves or others. Second, the legislature's decision to require the registration of persons found not guilty by reason of mental disease or defect following their release from confinement indicates that the legislature was indeed concerned about the public safety risk that those persons posed upon their release despite the existence of the statutory mechanisms to which the acquittee refers.[18]

---

[17] Section 17a-593 (g) allows a court to discharge an acquittee from the board's custody if the court finds that the acquittee's discharge would not "constitute a danger to the acquittee or others." See General Statutes § 17a-580 (11) (defining "person who should be discharged").

[18] The legislative history of No. 95-175 of the 1995 Public Acts, which amended Megan's Law to add persons found not guilty by reason of mental disease or defect to the class of persons required to register as sex offenders, reveals that this amendment was motivated by concerns that arose regarding such persons during the enactment of No. 95-142 of the 1995 Public Acts (P.A. 95-142). See 38 H.R. Proc., Pt. 9, 1995 Sess., p. 3322, remarks of Representative Michael Lawlor ("in the sex offender notification bill which was enacted in this House the other day, last week, the question arose regarding persons who had been found not guilty by reason of . . . mental

The acquittee also argues that the requirement that courts must make a public safety finding to grant a petition under § 54-255 (c) (5)—that is, that "dissemination of the registration information is not required for public safety"—similarly alleviates the public safety concern associated with restricting the public dissemination of acquittees' registration information. That same argument, however, could be made as to persons who served jail or prison time as a result of a conviction of a crime requiring registration under Megan's Law—persons whom the acquittee argues are clearly excluded by the plain meaning of § 54-255 (c) (5) (A). The legislative history reflects that the legislature concluded that individuals who had been confined, whether in a correctional facility or in a hospital, posed an inherently greater risk to public safety upon release, such that courts should not have discretion to make their own findings regarding the necessity of publicizing such offenders' registration information. This proposition

disease or defect of any of the enumerated charges in that bill and whether or not those persons would be required to register for the time period which had been outlined in that bill"). The legislative history of P.A. 95-142 reveals the following concerns: "[A] lot more needs to be done in this area because [sex offenders], for the most part, can't be treated properly. They can't be cured. We have had testimony from the Department of Mental Health that that is the case. We also have had information provided to us that there is a major defect in this bill, which we would hope to close. We are not going to try to do that today . . . but there are circumstances which we will try to close later, for which sexual offenders can't be released to the community. And those instances are in cases where a person is found not guilty by reason of insanity and is under supervision by the [board]." 38 H.R. Proc., Pt. 8, 1995 Sess., pp. 2696–97, remarks of Representative Dominic Mazzoccoli. We recognize that the skepticism expressed in the legislative history in 1995 regarding sex offender treatment has been largely debunked. See *McKune* v. *Lile*, 536 U.S. 24, 33, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002) ("[t]herapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism"); *Anthony A.* v. *Commissioner of Correction*, 339 Conn. 290, 324, 260 A.3d 1199 (2021) (same). Nevertheless, we are not at liberty to disregard the legislature's stated purpose for adopting the law that it did.

finds support in the legislature's choice to depart from the prior language of General Statutes (Rev. to 1999) § 54-255, which more broadly authorized courts to release a sexually violent offender from the registration obligation whenever that person had maintained his or her registration for at least ten years and the court found "that he [or she] [did] not suffer from a mental abnormality or personality disorder that [made] him [or her] likely to engage in sexually violent offenses."[19]

Finally, the acquittee attempts to distinguish offenders who are acquitted and confined from offenders who are convicted and confined, arguing that "the mere fact that there was an order of commitment, following [a finding of not guilty by reason of mental disease or defect] does not mean that the legislature perceived those [who] have been committed to a term of hospitalization and treatment [to be] as 'dangerous' as those [who] were legally culpable and ordered to serve a term of incarceration, as opposed to treated in a therapeutic setting." There also is no indication in the legislative history, however, that the legislature believed that offenders who were confined in a hospital for psychiatric disabilities were inherently less dangerous than those who were confined in a correctional facility such

[19] General Statutes (Rev. to 1999) § 54-255 provides in relevant part: "A person required to register under section 54-252 shall maintain his registration for not less than ten years from the date of his release into the community, after which he may apply to the court in which he was convicted or found not guilty by reason of mental disease or defect for release from the obligation to register. The court shall grant such application and shall notify the Department of Public Safety that the person is no longer subject to registration under sections 54-102g and 54-250 to 54-259, inclusive, provided the person satisfies the court by clear and convincing evidence that he does not suffer from a mental abnormality or personality disorder that makes him likely to engage in sexually violent offenses. The court shall refer the application of such person to a board of experts on the behavior and treatment of sexual offenders, which shall examine the person and make an assessment for the court regarding the person's potential for further violent sexual behavior. . . ."

that, assuming all other statutory criteria are satisfied, only the former should be eligible to petition to restrict the dissemination of their registration information.[20] Instead, the legislature's clear reference in § 54-255 (c) (5) (A) to "conviction *or* finding of not guilty by reason of mental disease or defect" evidences an intent that the "served no jail or prison time" criterion would be effective as to both classes of offenders. (Emphasis added.) For the same reason, we also are not persuaded by the acquittee's argument that adopting the state's interpretation of the statute will lead to the absurd result of "[conflating] punishment with treatment . . . [and] blur[ring] the lines between the Department of Correction and the [board], each formed and operated under distinct statutory schemes to accomplish very different purposes."[21] Indeed, our Supreme Court has recognized that the registration requirement "is regulatory and not punitive in nature." *State* v. *Kelly*, 256 Conn. 23, 94, 770 A.2d 908 (2001); see also *State* v. *Waterman*, 264 Conn. 484, 496–97, 825 A.2d 63 (2003). Thus, prohibiting offenders from petitioning to restrict the dissemination of their registration information if they do not meet the statutory criteria is not a punishment but instead serves to advance the legislature's "nonpunitive goals of protecting the public and facilitating future law enforcement efforts." (Internal quotation marks omitted.) *State* v. *Kelly*, supra, 92.

---

[20] Indeed, our Supreme Court has noted that "the focus of the inquiry with respect to [the confinement of] [an] acquittee is upon *the protection of the community*, the same consideration which is of primary concern in relation to the imprisonment of persons convicted of crimes." (Emphasis added.) *State* v. *Reed*, 192 Conn. 520, 529, 473 A.2d 775 (1984); see also General Statutes § 17a-582 (e) (court's "primary concerns" in ordering confinement, conditional release, or discharge of acquittee are "*the protection of society* and the safety and well-being of the acquittee" (emphasis added)).

[21] Of course, if the legislature shares the acquittee's concerns and wishes to amend the statute to clarify the meaning of the phrase "jail or prison time" within § 54-255 (c) (5) (A) to make it plain that the phrase includes only a term of imprisonment imposed as the result of a conviction, it may do so in accordance with "its role as the policy-making branch of our

Applying our construction of the statutory language to the facts of this case, we conclude that the acquittee's confinement in a hospital for psychiatric disabilities as a result of him being found not guilty by reason of mental disease or defect of a crime requiring registration under Megan's Law constitutes "jail or prison time" within the meaning of § 54-255 (c) (5) (A). The acquittee therefore does not meet the statutory criteria to petition to restrict the dissemination of his registration information. Because we can resolve the issue of whether the court properly denied the acquittee's petition on this statutory ground, we do not reach the merits of the acquittee's constitutional claim. See *State* v. *Graham S.*, supra, 149 Conn. App. 343. Accordingly, we affirm, although on a different basis, the court's decision to deny the acquittee's petition.

The judgment is affirmed.

In this opinion the other judges concurred.

government." (Internal quotation marks omitted.) *Clark* v. *Waterford, Cohanzie Fire Dept.*, 346 Conn. 711, 736, 295 A.3d 889 (2023).